_____

95-2887
_____

David Marts, doing business Lasertech,*
                                        *
     Plaintiff/Appellant,             *
                                        *
     v.                                 *    Appeal from the United States
                                        *    District Court for the
Xerox, Inc.,                            *    Western District of Arkansas
                                        *
     Defendant/Appellee.               *
_____

              Submitted:   January 8, 1996

                 Filed:    March 11, 1996
_____

Before WOLLMAN, CAMPBELL,* and MURPHY, Circuit Judge.
_____


MURPHY, Circuit Judge.


        David Marts, doing business as Lasertech, brought this action
alleging that Xerox, Inc. violated federal antitrust and Arkansas law by
conditioning certain photocopier warranties on the use of Xerox replacement
copy cartridges.  After both sides moved for summary judgment, the district
court[1] granted the motion of Xerox and ordered judgment entered in its
favor.  Marts appeals from that judgment, and we affirm for the following
reasons.

_____

        *The HONORABLE LEVIN H. CAMPBELL, United States Circuit
     Judge for the First Circuit, sitting by designation.

        [1]The Honorable Jimm Larry Hendren, United States District
Judge for the Western District of Arkansas.

Xerox manufactures several models of photocopiers in the twelve to thirty page per minute category, referred to as convenience copiers. Xerox includes a three year warranty with these copiers at no additional charge. The warranty covers all parts and service necessary during that period. Xerox also offers one year extended warranties which can be purchased after the initial warranty expires at a cost between roughly $200 and $500 per year. Both the initial and extended warranties require that the customer use only Xerox copy cartridges.[2] The cartridges contain a number of critical components with limited lives and produce approximately 20,000 copies. Users can replace spent cartridges easily.

---

[2]The relevant warranty provisions read:

D.   VOIDING OF WARRANTY

IF, DURING THE WARRANTY PERIOD, CUSTOMER USES A COPY
CARTRIDGE OTHER THAN AN UNMODIFIED NEW OR RECYCLED
CARTRIDGE PURCHASED FROM XEROX AND/OR THE COPY
CARTRIDGE BEING USED IS MODIFIED FROM ITS ORIGINAL
CONFIGURATION, THIS WARRANTY WILL BE VOID.   If the
warranty becomes void, Customer may purchase from
Xerox, if available, a Service Agreement or service at
the then current time and materials rates.


E.   Warranty Procedure

The customer must telephone the Xerox Customer Service
Support Center . . . with the copier serial number, a
description of the problem and any status codes
displayed on the control panel.  The Xerox Service
Representative will attempt to diagnose and solve the
problem on the telephone, and when necessary, schedule
a Xerox service call to repair the Equipment.  IF THE
CUSTOMER IS USING A CARTRIDGE THAT RESULTS IN A VOIDED
WARRANTY AND A XEROX REPRESENTATIVE TRAVELS TO THE
INSTALLATION ADDRESS TO PERFORM WARRANTY SERVICE, THE
SERVICE REPRESENTATIVE WILL ADVISE CUSTOMER THE
WARRANTY IS VOID.  SUCH SERVICE CALL WILL BE BILLED TO
CUSTOMER AT XEROX' THEN APPLICABLE TIME AND MATERIALS
RATES.  CUSTOMER MAY INITIATE A SERVICE AGREEMENT
WITHOUT CARTRIDGE COVERAGE.

Xerox will service its copiers that are not under warranty.  Service is available on a time and materials basis, in which case the customer pays for parts and labor ($155 for the first half hour and $120 per hour thereafter.)  Xerox also offers a maintenance agreement which requires that customers pay an annual charge of roughly $150 and then a fixed price for each service call, also roughly $150.  Parts are included in that charge.

Lasertech is an Arkansas proprietorship owned by David Marts.  In addition to servicing photocopiers and computer printers, Lasertech reconditions and sells toner and copy cartridges used by various printers and copiers.  In late 1993, Lasertech began reconditioning cartridges for Xerox convenience copiers.  It sold twelve remanufactured Xerox cartridges to two clients in Fort Smith, Arkansas over a period of several months.  Lasertech presented evidence that at least one client stopped purchasing Lasertech cartridges when Xerox personnel informed him that continued use of non-Xerox cartridges would void the warranties on the copiers.  The evidence suggests that Lasertech contacted several other prospective clients, at least one of whom expressed interest in purchasing Lasertech products before learning from Xerox that the new copier warranty would be voided.  Lasertech made no further sales of remanufactured Xerox cartridges since early 1994.

Lasertech sued Xerox in the district court, alleging violations of § 1 of the Sherman Act, 15 U.S.C. § 1,[3] and § 3 of

---

[3]Section 1 of the Sherman Act, 15 U.S.C. § 1, reads:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.  Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a

corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

the Clayton Act, 15 U.S.C. § 14.[4] Lasertech claimed that Xerox improperly tied the availability of warranty service to the purchase of Xerox cartridges. The complaint also alleged that Xerox had tortiously interfered with Lasertech's contract rights and business expectations.[5] Xerox responded with a number of defenses, including that it lacked the market power necessary to produce anticompetetive effects, that it made service available to copier owners in economically viable ways other than the warranties, and that Lasertech had not proven antitrust damages.

The district court concluded that Xerox lacked sufficient market power to make any tying arrangement a violation of federal antitrust law. Based on this conclusion and a stipulation by

---

[4]Section 3 of the Clayton Act, 15 U.S.C. § 14, reads:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

[5]The complaint also alleged that Xerox had damaged Lasertech's business reputation and had used deceptive trade practices under Ark. Code Ann. §§ 4-88-101 et seq. These claims were dismissed by stipulation of the parties before the district court ruled on the motions for summary judgment.

Lasertech that no state law violation could be shown if there was no violation of federal law, the district court granted summary judgment in favor of Xerox.

We review a grant of summary judgment de novo; like the district court, we must construe the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is appropriate where there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Id. at 247-48, 250. The nonmoving party must show that there is some genuine issue requiring trial. Id. at 250.

A tying arrangement is "the sale or lease of one item (the tying product) on the condition that the buyer or lessee purchase a second item (the tied product) from the same source." Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1498 (8th Cir. 1992) (citations omitted), cert. denied, 506 U.S. 1080 (1993). When a party can use its market power in the tying product to force customers to buy the tied product, competition may be harmed and the market upset. See Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 10 n.14 (1984).

A plaintiff may prove a per se tying violation under the Sherman Act by demonstrating that two distinct products are tied, that the defendant has sufficient power in the tying product market to restrain competition in the tied product market, and that the tied product involves a "not insubstantial" amount of interstate commerce. Amerinet, 972 F.2d at 1498-99 (citations omitted). The Supreme Court stated in Jefferson Parish that:

> Our cases have concluded that the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different

-5-

> terms. When such "forcing" is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated.

466 U.S. at 12. Lasertech argues that Xerox forced customers to buy Xerox cartridges by illegally tying both the initial and extended warranties to the purchase of its copy cartridges. We address each type of warranty in turn.

With respect to the three year new copier warranty, Lasertech's claim does not fit easily into the existing structure of antitrust law. The warranty is given to customers at no additional charge when they purchase a copier and is therefore neither sold nor leased. As a practical matter, however, the warranty is included in the sale price. Warranties are similar to service agreements but may differ in some ways. Moreover, customers expect at least some warranty period on most products. For all of these reasons, the identity of the tying product is somewhat unclear and assessing any anticompetitive effects of a warranty may be difficult.

We need not decide these issues here, however, since we conclude that Lasertech has in any event not presented sufficient evidence of an illegal tying arrangement to create a genuine issue for trial. Although the warranty does condition its continuation on the use of Xerox cartridges, a warranty is only one way of receiving service for a new Xerox copier. "[W]here the buyer is free to take either product by itself there is no tying problem even though the seller may also offer the two items as a unit at a single price." Northern Pacific Ry. Co. v. United States, 356 U.S. 1, 6 n.4 (1958). An owner of a new Xerox copier could forego the benefits of the warranty, buy service from Xerox or an independent provider, and purchase cartridges from the vendor of its choice. The end result is the same: customers receive both service and cartridges for their copiers.

Even if the products are available separately, an illegal tying arrangement can exist if purchasing the items together is the "only viable economic option." Amerinet, 972 F.2d at 1500. Lasertech has failed to introduce evidence that purchasing service from Xerox through the service maintenance agreement or on a time and materials basis is not viable. The record contains no information regarding the frequency of required repairs on Xerox copiers. Without that data, it is impossible to know whether the other service and cartridge options are materially more expensive, and if so by how much. Because we cannot conclude that the other service options were prohibitively expensive, id. at 1500-01, any tying arrangement was not illegal and summary judgment was appropriate as to the initial warranty.[6]

The issues regarding extended warranties are more straightforward because they are simply a type of service contract. After the initial warranty expires, a Xerox copier owner may choose from several options. A series of one year extensions of the warranty may be purchased from Xerox for a flat fee, in which case

---

[6]Regardless of how the tying product market is defined, Lasertech also cannot prevail under the Clayton Act. If the tying product market is service on new Xerox copiers, the Clayton Act is inapplicable because warranties are services. The Clayton Act applies only when both the tying and tied products are goods. 15 U.S.C. § 14; see Advance Business Systems & Supply Co. v. SCM Corp., 415 F.2d 55, 61 (4th Cir. 1969).

If the tying product market is new convenience copiers with warranties, Xerox lacks sufficient market power in the copier market to support per se liability under the Clayton Act. See, e.g., Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp., 959 F.2d 468, 477 (3d Cir.), cert. denied, 506 U.S. 868 (1992). Lasertech concedes that Xerox has less than eighteen percent of the convenience copier market, which is insufficient under the circumstances. See., e.g., Jefferson Parish, 466 U.S. at 26-27 (thirty percent insufficient); Morgenstern v. Wilson, 29 F.3d 1291, 1296 n.3 (8th Cir. 1994)(thirty percent insufficient in § 2 monopolization claim), cert. denied, 115 S. Ct. 1100 (1995); Baxley-DeLamar Monuments, Inc. v. American Cemetery Ass'n, 938 F.2d 846, 852 (8th Cir. 1991)(twenty-nine to thirty-one percent insufficient to support tying claim).

Xerox cartridges must be used.  See supra note 2.  Xerox service may be purchased on a time and materials basis or through the standard maintenance agreement, or an independent service operator may be used.  Any brand of cartridge may be used under the latter arrangements.

Again Lasertech has failed to show that the other service options offered by Xerox are prohibitively expensive.  Amerinet, 972 F.2d at 1500-01.  Without evidence of the frequency and severity of required repairs, the relative costs of the various service options cannot be established.  Because Lasertech has failed to show that the tie-in included in the extended warranty is the only economically viable option, there is no illegal tying arrangement under the Sherman Act.[7]  Id.  Because of this determination it is not necessary to discuss Lasertech's other arguments and Xerox's other defenses.

Since Lasertech has conceded that the remaining state law claim should be dismissed if it is unsuccessful under the Sherman and Clayton Acts, summary judgment was properly granted on the tortious interference claim.

Accordingly, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]We need not consider the application of the Clayton Act to the Xerox extended warranties because they are services rather than goods.  15 U.S.C. § 14; see supra note 6.