**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

———————

No. 97-1456

———————

Double D Spotting Service, Inc.,   *
                                        *

        Plaintiff-Appellant,   *   Appeal from the United States
                                        *   District Court for the
    v.                             *   Southern District of Iowa.
                                          *

Supervalu, Inc.; World Super   *
Services, Inc.,                *
                                          *

        Defendants-Appellees.   *

———————

Submitted: October 23, 1997

                             Filed: February 11, 1998

———————

Before RICHARD S. ARNOLD, Chief Judge, LOKEN and HANSEN, Circuit Judges.

———————

HANSEN, Circuit Judge.

     Double D Spotting Service, Inc. (Double D) brought this suit against Supervalu, Inc. (Supervalu) and World Super Services, Inc. (World Super Services), alleging that the defendants violated federal antitrust laws, state competition laws, and a federal motor carrier law. The district court dismissed Double D's complaint for failure to state a claim. <u>See</u> Fed. R. Civ. P. 12(b)(6). We affirm in part and reverse in part.

**I.**

When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe them in the light most favorable to the plaintiff.  See <u>Doe v. Norwest Bank Minnesota, N.A.</u>, 107 F.3d 1297, 1303-04 (8th Cir. 1997).  In its amended and substituted complaint, Double D pleaded that until 1996, it had been in the business of competing with other companies to provide semitrailer unloading services for over the road trucking companies that deliver goods to the Supervalu warehouse in Urbandale, Iowa.  The semitrailers travel in interstate commerce, carrying goods that are unloaded at the Supervalu warehouse and subsequently shipped to grocery stores in several states.  In addition to unloading trucks driven to the warehouse by the trucking company drivers, Double D offered trucking companies a more involved unloading service.  By agreement with Double D, the trucking company could drop its loaded, unhooked semitrailer at a nearby interstate truck stop.  A Double D driver driving a Double D tractor would then hook on to the trailer and transport it to the Supervalu warehouse.  The Double D driver would then unload the semitrailer and return it empty to the same truck stop location for the over the road trucking company to retrieve at its convenience.  This service allowed the over the road trucking company to save the time and expense of paying its own driver both to deliver the semitrailer to the warehouse and to wait for it to be unloaded.  It also freed up the trucking company's tractor for other work.

In 1996, Supervalu entered into an agreement granting World Super Services the exclusive right to provide unloading services at the Urbandale warehouse.  The agreement provided fixed prices to be charged by World Super Services and barred all other unloading companies from performing any unloading services at the Urbandale warehouse.  Thereafter, trucking companies could choose either to unload their own trucks at the warehouse or to hire World Super Services to unload them.  Double D complains that the agreement between Supervalu and World Super Services wrongfully

eliminated competition and imposed an unreasonable restraint on the unloading services trade at Supervalu's Urbandale warehouse.

Double D originally brought suit against Supervalu and World Super Services in state court, seeking an injunction and damages for the defendants' alleged restraint of trade and competition in violation of state and federal antitrust law and for alleged tortious interference with Double D's business relationships. The defendants removed the case to federal district court and moved to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Double D filed an amended and substituted complaint in federal district court, alleging in counts I through IV that the defendants contracted to restrain trade in violation of Iowa Code § 553.4 (1997) and Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1994); and that they attempted to establish a monopoly in violation of Iowa Code § 553.5 and Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Count V alleges a violation of 49 U.S.C.A. § 14103(b) (West 1997), which prohibits the act of coercing any motor carrier operator to pay someone to load or unload the property being transported in interstate commerce.

The district court granted the defendants' motion to dismiss. The court held that Double D failed to state a claim of restraint of trade or monopoly as alleged in counts I through IV, concluding that the facts as alleged do not constitute a legally cognizable relevant market or demonstrate an actual adverse impact on competition within that market. Additionally, the district court concluded that count V, asserting coercion of a ?person providing transportation of property by motor vehicle for compensation in interstate commerce," fails to state a claim because there is no allegation that any trucking companies were forced or coerced to pay World Super Services to unload their semitrailers. Double D appeals the dismissal of its complaint.

-3-

**II.**

We review de novo the district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Association of Commonwealth Claimants v. Moylan, 71 F.3d 1398, 1402 (8th Cir. 1995). Using the same standard as the district court, we must accept the factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff. Doe, 107 F.3d at 1303-04. We affirm a Rule 12(b)(6) dismissal if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996) (internal quotations omitted), cert. denied, 117 S. Ct. 1081 (1997).

**A. Antitrust Claims**

The first four counts of Double D's complaint allege violations of state and federal antitrust law. Two counts are based on the Sherman Antitrust Act, which declares it unlawful to contract or form a conspiracy "in restraint of trade or commerce among the several States," 15 U.S.C. § 1, and which makes it a felony to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States," 15 U.S.C. § 2. Two counts are based on Iowa statutes that mirror these federal prohibitions, absent the interstate commerce element. See Iowa Code §§ 553.4, 553.5.[1] "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's [Rule]

---

[1]Section 553.4 provides, "A contract, combination , or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a relevant market." Section 553.5 provides, "A person shall not attempt to establish . . . a monopoly of trade or commerce in a relevant market for the purpose of excluding competition or of controlling, fixing, or maintaining prices."

-4-

12(b)(6) motion."  Crane & Shovel Sales Corp. v. Bucyrus-Erie Co., 854 F.2d 802, 805 (6th Cir. 1988).

The district court concluded that Double D's antitrust claims failed to state a claim because Double D failed to plead a valid relevant market. Double D contends that it was not required to plead a relevant market because it pleaded per se antitrust violations.  Alternatively, Double D asserts that even if it was necessary for it to plead a relevant market, the Supervalu warehouse in Urbandale itself is the relevant market for trailer unloading services.

To demonstrate a violation of section 1 of the Sherman Act, a plaintiff must provide proof of an illegal contract, combination, or conspiracy which results in an unreasonable restraint of trade.  State Oil Co. v. Khan, 118 S. Ct. 275, 279 (1997). "[M]ost antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition."  Id.  This "rule of reason" analysis involves an inquiry into the market structure and the defendant's market power in order to assess the actual effect of the restraint.  Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768 (1984); see also Flegel v. Christian Hosp., Northeast-Northwest, 4 F.3d 682, 688 (8th Cir. 1993).

Certain types of restraint are so inherently anticompetitive that they are illegal per se, without inquiry into the reasonableness of the restraint or the harm caused.  Copperweld Corp., 467 U.S. at 768; see also Khan, 118 S. Ct. at 279.  "It is only after considerable experience with certain business relationships that courts classify them as *per se* violations of the Sherman Act."  United States v. Topco Assocs., 405 U.S. 596, 607-08 (1972). "*Per se* treatment is appropriate once experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it."  Khan, 118 S. Ct. at 279 (internal quotations and alterations omitted).

-5-

Practices which have been held to be illegal per se include price-fixing, division of markets, group boycotts, and tying arrangements. <u>See</u> <u>Arizona v. Maricopa County Med. Soc.</u>, 457 U.S. 332, 344 n.15 (1982); <u>Northern Pac. Ry. v. United States</u>, 356 U.S. 1, 5 (1958). The district court concluded that under a liberal construction of the factual circumstances pleaded, Double D failed to plead circumstances under which it could prove a per se antitrust violation. We agree.

In support of its contention that it has pleaded per se violations, Double D contends that the agreement between Supervalu and World Super Services amounts to a horizontal restraint of trade, which the Supreme Court has described as a ?naked restraint[] of trade with no purpose except stifling of competition." <u>Topco</u>, 405 U.S. at 608 (internal quotations omitted). Horizontal restraints of trade result when combinations of traders at one level of the market structure agree to exclude direct competitors from the same level of the market. <u>See</u> <u>id.</u> Thus, a plaintiff alleging a horizontal restraint must at least define the market and its participants, which, for reasons discussed below, Double D has failed to do. Supervalu is not a participant in the unloading services market at the same level as Double D or World Super Services. Furthermore, for reasons discussed more fully below, we conclude that Supervalu's agreement with World Super Services has no improper effect of restraining trade in the relevant unloading services market, because Double D has failed to plead a valid relevant market. Thus, Double D has not stated a claim of a per se horizontal restraint of trade.

Double D asserts that it has also alleged vertical price-fixing as a per se violation. Vertical restraints of trade result from agreements among ?combinations of persons at different levels of the market structure, *e.g.*, manufacturers and distributors." <u>Id.</u> Vertical nonprice restrictions are governed by the rule of reason and are not per se violations, because they ?promote interbrand competition by allowing the manufacturer to achieve certain efficiencies in the distribution of his products." <u>Continental T.V., Inc. v. GTE Sylvania Inc.</u>, 433 U.S. 36, 54 (1977). We have noted that vertical

refusals to deal are subject to the rule of reason unless they are price-related ?or are designed to enforce underlying restrictions that would otherwise be subject to *per se* analysis," such as an illegal tying arrangement. Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 590 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988). Generally, vertical price restrictions are per se antitrust violations. Business Elec. Corp. v. Sharp Elec. Corp., 485 U.S. 717, 735-36 (1988) (?A vertical restraint is not illegal per se unless it includes some agreement on price or price levels."). Recently, however, the Supreme Court has clarified that vertical maximum price-fixing is not a per se violation but is subject to the rule of reason. See Kahn, 118 S. Ct. at 283. Double D asserts that the agreement between Supervalu and World Super Services is one fixing prices between market participants at different levels of the market structure and therefore amounts to a vertical per se price-fixing violation. We disagree. The agreement at issue does not fix prices between different levels of the market structure. Instead, the agreement fixes the price that one unloading service provider can charge at Supervalu's one warehouse in Urbandale, Iowa. Such an arrangement does not amount to an unlawful restraint between different levels of the market structure. Rather, it demonstrates an isolated agreement concerning Supervalu's operation of its warehouse. Double D has not stated a claim of a per se vertical price-fixing violation.

Double D also asserts that it has stated an unlawful tying arrangement. ?A tying arrangement is ‹the sale or lease of one item (the tying product) on the condition that the buyer or lessee purchase a second item (the tied product) from the same source.'" Marts v. Xerox, Inc., 77 F.3d 1109, 1112 (8th Cir. 1996) (quoting Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1498 (8th Cir. 1992)), cert. denied, 506 U.S. 1080 (1993)). ?[A] per se illegal tying arrangement does not exist unless the defendant has coerced buyers into purchasing a product [or service] which such buyers otherwise would not have purchased or would have purchased from a different source than the defendant." Amerinet, 972 F.2d at 1499. In this case, Double D asserts that a tying arrangement arose because trucking companies who deliver trailers to Supervalu's

Urbandale warehouse (the alleged tying service) and who want to use an unloading service have no choice but to use World Super Service's unloading service (the alleged tied service).  Double D's attempt to define this situation as a tying arrangement is unsuccessful. The trucking companies always remain free to unload their own trucks, and they are not coerced into hiring World Super Service's third-party unloading service.  Furthermore, to demonstrate a per se tying violation the plaintiff must show that the defendant has sufficient market power in the tying product or service market to restrain competition.  Marts, 77 F.3d at 1112.  As we will discuss below, Double D's complaint fails to plead a valid relevant market, and thus Double D could not demonstrate sufficient market power necessary to state or sustain a tying violation.

Because no per se violation is established, it is necessary for Double D to allege a valid relevant market in order to apply the rule of reason analysis to determine whether the arrangement amounts to an unreasonable restraint of trade within the meaning of section 1 of the Sherman Act.  As we noted above, the  ?rule of reason" analysis involves ?an inquiry into market power and market structure" to assess the actual effect of the restraint.  Copperweld Corp., 467 U.S. at 768.  Double D must also allege a valid relevant market in order to prevail on its monopoly claim.  Section 2 of the Sherman Act requires a plaintiff to plead and prove that the defendant ?(1) possessed monopoly power in the relevant market and (2) willfully acquired or maintained that power as opposed to gaining it as a result ‹of a superior product, business acumen, or historical accident.'" Amerinet, 972 F.2d at 1490 (quoting United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966)).  Thus, in order to state a Sherman Act claim under either section 1 or section 2, the plaintiff must identify a valid relevant market.   See Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 877 (3d Cir. 1995);  Tunis Bros. Co. v. Ford Motor Co., 952 F.2d 715, 726 (3d Cir. 1991), cert. denied, 505 U.S. 1221 (1992).

We note that courts are hesitant to dismiss antitrust actions before the parties have had an opportunity for discovery, because the proof of illegal conduct lies largely

-8-

in the hands of the alleged antitrust conspirators.  <u>Huelsman v. Civic Ctr. Corp.</u>, 873 F.2d 1171, 1174 (8th Cir. 1989).  A dismissal on the pleadings should be "'granted sparingly and with caution.'"  <u>Id.</u> (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1349 (1969)).  Most often, "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers."  <u>Queen City Pizza, Inc. v. Domino's Pizza, Inc.</u>, 124 F.3d 430, 436 (3d Cir. 1997), <u>petition for cert. filed</u> (Jan. 5, 1998).  This general rule, however, does not amount to "a *per se* prohibition against dismissal of antitrust claims for failure to plead a relevant market under Fed. R. Civ. P. 12(b)(6)."  <u>Id.</u>

It is the plaintiff's burden to define the relevant market.  <u>Id.</u> "Antitrust claims often rise or fall on the definition of the relevant market."  <u>Bathke v. Casey's Gen. Stores, Inc.</u>, 64 F.3d 340, 345 (8th Cir. 1995).  "The definition of the relevant market has two components - a product market and a geographic market."  <u>Id.</u>  The relevant product market includes all reasonably interchangeable products.  <u>See</u> <u>Queen City Pizza</u>, 124 F.3d at 436.  The geographic market is defined by considering the commercial realities faced by consumers.  <u>Bathke</u>, 64 F.3d at 345.  It includes the geographic area in which consumers can practically seek alternative sources of the product, and it can be defined as "the market area in which the seller operates."  <u>Tampa Elec. Co. v. Nashville Coal Co.</u>, 365 U.S. 320, 327 (1961); <u>see</u> <u>Bathke</u>, 64 F.3d at 345.

In each of the four antitrust counts of its complaint, Double D states that Supervalu and World Super Services engaged in anticompetitive activity within the relevant market "for unloading services at the Supervalu, Inc. warehouse in Urbandale, Iowa."  (Appellant's App. at 26, 31, 34, and 36.)  Thus, the product market is defined as unloading services and the geographic market is alleged to be the Supervalu warehouse in Urbandale, Iowa, which is a suburb of Des Moines.  We agree with the district court that, as a matter of law, this stated geographic market is too narrow to support a claim of an antitrust violation.  At issue is one contract between the owner of one particular warehouse within the Des Moines metropolitan area and one

unloading service provider.  The contract provides that this one unloading service provider has the right, subject to an agreed upon price schedule, to provide all of the unloading services at this particular warehouse. Supervalu's one warehouse in Urbandale does not amount to a relevant market for unloading services of this type.  Rather, the market for unloading services would seem to be more properly defined as including all warehouses within, at least, the entire Des Moines, Iowa, metropolitan area, if not an even larger area.

"'It is axiomatic that the antitrust laws were passed for the protection of *competition*, not *competitors*.'"  <u>Bathke</u>, 64 F.3d at 344 (quoting <u>Brooke Group, Ltd. v. Brown & Williamson Tobacco</u>, 509 U.S. 209, 224 (1993)) (other internal quotations omitted).  As the district court in the present case aptly stated, "[p]laintiff's complaint does no more than state plaintiff's commercial disappointment at losing the unloading business at the Supervalu warehouse."  (Appellant's Adden. at 6.)  Disappointment at not receiving one unloading contract at one particular warehouse is insufficient as a matter of law to rise to the level of an antitrust violation within a relevant market.

For the same reasons, the Iowa state law claims pursuant to sections 553.4 and 553.5 of the Iowa Code fail as well.  The Iowa Competition Law, Iowa Code §§ 553.1-553.18 (1997), must "be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter."  Iowa Code § 553.2.  <u>See</u> <u>also</u> <u>State v. Cedar Rapids Bd. of Realtors</u>, 300 N.W.2d 127, 128 (1981).  Double D asserts that several material differences exist between the express language of section 553.4 of the Iowa Competition Law and section 1 of the Sherman Act, and likewise between Iowa Code section 553.5 and section 2 of the Sherman Act, which indicate that a smaller relevant market is acceptable under the Iowa Competition Law than the Sherman Act would tolerate.  Aside from the lack of an interstate commerce requirement, the wording of the state provisions is very similar to that of their federal counterparts.  Our research has produced no Iowa case law dealing with the requirement to plead a relevant market.  In an absence of state case

law on point, it is necessary to examine the comparable federal statutes and case law, see Cedar Rapids Bd. of Realtors, 300 N.W.2d at 128, which we have done above.

We conclude that Double D has not stated a per se violation or valid relevant market under either federal or state law.  Accordingly, the district court properly dismissed counts I through IV of the amended and substituted complaint for failure to state a claim.

## B.  Motor Carrier Operator Claim

In count V of its complaint, Double D asserts that by precluding it from delivering and unloading semitrailers for trucking companies, Supervalu and World Super Services wrongfully coerced operators of motor carriers into either unloading their semitrailers themselves or employing the only unloading service available, World Super Services, in violation of 49 U.S.C.A. § 14103(b) (West 1997).  The district court dismissed this count for failure to state a claim, concluding that Double D lacks standing to bring this claim and that Double D did not allege that any carrier was forced to pay someone else to unload its truck.  The court noted that each trucker was free to unload his own truck.  Thus, the district court concluded that the conduct alleged was not coercive within the meaning of the statute and failed to state a claim.  Double D argues on appeal that the district court's ruling ignores its pleaded facts that Double D itself has been engaged in providing transportation of property by motor vehicle within the meaning of the statute when it hooks on to the trailer left for it at nearby truck stops and transports it to the warehouse, and that it acts not just as an unloader.

Section 14103(b) provides as follows:

It shall be unlawful to coerce or attempt to coerce any person providing transportation of property by motor vehicle for compensation in interstate commerce (whether or not such transportation is subject to jurisdiction

under subchapter I of chapter 135) to load or unload any part of such property onto or from such vehicle or to employ or pay one or more persons to load or unload any part of such property onto or from such vehicle . . . .

The wording of this statute is not limited to protecting only actual trucking companies or registered motor carriers ?under subchapter I of chapter 135." Id. Instead, the statute says, ?any person providing transportation of property by motor vehicle for compensation in interstate commerce" must be allowed to unload his own truck free of coercion to pay someone else to do the job. Id. (emphasis added). We conclude that Double D's complaint alleges facts at least sufficient to survive a Rule 12(b)(6) motion to dismiss. As we noted before, Double D alleges that it often provided a service to interstate trucking companies where a Double D driver would transport a semitrailer from a local truck stop to the Supervalu warehouse and would return the semitrailer to the designated location after unloading the truck.

Double D has alleged a set of facts which if proved come within the provisions of the statute. Accordingly, we reverse the dismissal of count V and remand for further proceedings.

### III. Conclusion

For the reasons stated above, we affirm the judgment of the district court dismissing counts I through IV of the amended and substituted complaint. We reverse the judgment of the district court dismissing count V and remand to the district court for further proceedings on that count.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.