INTERSTATE OIL AND SUPPLY COMPANY and
R.J. Yelenich *v.* TROUTMAN OIL COMPANY

97-1414                                    972 S.W.2d 941

Supreme Court of Arkansas
Opinion delivered July 2, 1998

[Petition for rehearing denied September 17, 1998.]

*Harrill & Sutter, PLLC,* by: *Raymond Harrill,* for appellants.

*Cook, Elmore & Associates,* by: *Larry Cook,* for appellees.

W.H. "DUB" ARNOLD, Chief Justice. This is a breach-of-contract case. The appellants, Interstate Oil and Supply Company and its owner, R. J. Yelenich ("Interstate"), appeal from a $187,289.57 judgment entered in favor of appellee, Troutman Oil Company ("Troutman"), following a jury trial in the First Division of Pulaski County Circuit Court. Interstate seeks a new trial, raising the following issues: that the trial court erred in (1) refusing to limit Troutman's proof of damages to $50,000.00 under Ark. R. Civ. P. 8(a); (2) failing to exclude testimony regarding Troutman's claim for lost profits; and (3) rejecting its argument that Troutman's construction of the parties' contract was illegal as violative of federal antitrust laws. Because we conclude that none of Interstate's arguments has merit, we affirm the trial court's judgment.

This case has its genesis in a 1993 contract entered into between the parties, which are gasoline and diesel-fuel distributors that service gas stations and convenience stores in central Arkansas. According to the contract, Troutman purchased Interstate's inventory, rolling equipment, and the right to supply twelve listed service stations that Interstate had been supplying. Interstate, which owned some of the service stations it supplied but leased them to independent operators, agreed, as part of the contract, to cooperate and assist Troutman in retaining business of its former customers. It further agreed not to compete with Troutman within a thirty-mile radius for a period of ten years. Troutman agreed to rent Interstate's warehouse and to pay Interstate a commission for gas sold at the service stations. The purchase price under the contract was $300,000.00, half of which Troutman paid Interstate at closing, with the remaining half to be financed over a ten-year period.

Subsequently, Jerry Butler, the operator of the Baseline and Chicot Road station listed in the contract at issue, refused to purchase his gasoline from Troutman. As a result, Troutman sued Interstate for breach of contract, contending that Interstate was obligated under the agreement to require Mr. Butler to purchase his gas from Troutman. Troutman later amended its complaint, stating that it was unable to supply three additional enumerated gas stations in the contract. Interstate filed a counterclaim against Troutman. Following a jury trial, the jury awarded Troutman $187,289.57 on its claim and Interstate $144,000.00 on its counterclaim. The trial court entered its judgment accordingly, providing that Troutman was to recover $43,400.57 from Interstate. Interstate filed a motion for new trial, which the trial court denied. This appeal followed.[1]

## I. Ark. R. Civ. P. 8(a)

For its first allegation of error, Interstate contends that the trial court erred in refusing to limit Troutman's proof of damages to $50,000.00 because neither the complaint nor amended complaint contained a demand for an amount in excess than that

---

[1] Troutman does not cross-appeal the judgment on Interstate's counterclaim.

required for federal court jurisdiction in diversity-of-citizenship cases.[2] This is an issue of first impression for this court and requires us to interpret our rules of civil procedure. *See* Ark. Sup. Ct. R. 1-2(b)(1) and (6). The rule at issue, Ark. R. Civ. P. 8(a), reads in pertinent part:

> Claims for Relief. A pleading which sets forth a claim for relief, whether a complaint, counterclaim, crossclaim, or third party claim, shall contain (1) a statement in ordinary and concise language of facts showing that the court has jurisdiction of the claim and is the proper venue and that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader considers himself entitled. *In claims for unliquidated damage, a demand containing no specified amount of money shall limit recovery to an amount less than required for federal court jurisdiction in diversity of citizenship cases, unless language of the demand indicates that the recovery sought is in excess of such amount. Relief in the alternative may be demanded.* (Emphasis added.)

In the present case, Troutman's claim for damages in its complaint and amended complaint was "undetermined but exceed[s] $10,000.00." There was no language in the complaint or amended complaint that indicated that Troutman sought more than $50,000.00. Because Troutman's claim was for unliquidated damages, Interstate asserts that the plain language of Rule 8(a) limited Troutman's recovery to $50,000.00. Accordingly, Interstate claims, Troutman's proof of damages should have been limited to this amount.

■■ While we have not previously interpreted the demand requirement, the Reporter's Notes to Rule 8 state that "[t]he obvious purpose of this section is to prevent a plaintiff from using unliquidated demands to avoid removal of diversity of citizenship cases to federal court." Rule 8(a), which determines jurisdiction only, must be read together with Ark. R. Civ. P. 15(b), which provides that, when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In

---

[2] The minimum amount required for federal court jurisdiction in diversity-of-citizenship cases has since been raised to $75,000.00. *See* 28 U.S.C. § 1332.

the present case, Troutman responded to Interstate's first set of interrogatories on August 23, 1996, and produced a chart indicating that it was demanding $184,950.00 in damages. At this point, which was well before the April 10, 1997, trial, Interstate could have sought removal of Troutman's claim to federal court pursuant to 28 U.S.C. § 1446. It chose not to do so. Accordingly, Interstate's argument is meritless.

## II. Lost profits

Next, Interstate claims that the trial court should have excluded Troutman's evidence of lost profits because Troutman failed to include the cost of overhead in its calculation. We reviewed our guidelines in reviewing damage awards that include lost profits in *Little Rock Wastewater Util. v. Larry Moyer Trkg.*, 321 Ark. 303, 312, 902 S.W.2d 760 (1995):

> When a party seeks to recover anticipated profits under a contract, he must present a reasonably complete set of figures to the jury and should not leave the jury to speculate as to whether there could have been any profits. *American Fidelity Fire Ins. Co. v. Kennedy Bros. Constr. Co., Inc.*, 282 Ark. 545, 670 S.W.2d 798 (1984). Lost profits must be proven by evidence showing that it was reasonably certain the profits would have been made had the other party carried out its contract. *Id.* at 546, 670 S.W.2d at 799; *Reed v. Williams*, 247 Ark. 314, 775 S.W.2d 90 (1969). Such proof is speculative when based upon such factors as projected sales when there are too many variables to make an accurate projection. *See Sumlin v. Woodson*, 211 Ark. 214, 199 S.W.2d 936 (1947).

We further explained in *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985), the rule that uncertain or contingent damages cannot be recovered:

> The rule that damages which are uncertain or contingent cannot be recovered does not apply to uncertainty as to the value of the benefits to be derived from performance, but to uncertainty as to whether any benefit would be derived at all. If it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover.

*Jim Halsey Co.*, 284 Ark. at 467–468; *Crow v. Russell*, 226 Ark. 121, 289 S.W.2d 195 (1956) (*quoting Black v. Hogsett*, 145 Ark. 178, 224 S.W. 439 (1920)). The fact that a party can state the amount of damages he suffered only approximately, we said, is not a sufficient reason for disallowing damages if from the approximate estimates a satisfactory conclusion can be reached. *Id.* at 468.

■ According to one commentator, the weight of authority holds that fixed overhead expenses need not be deducted from gross income to arrive at the net profit properly recoverable. 2 Robert L. Dunn, *Recovery of Damages for Lost Profits*, § 6.5 at 366 (4th ed. 1992). The rationale behind this rule is that overhead continues whether or not the contract in question has been breached. *Id.* at 373. If overhead is deducted, thereby reducing recoverable damages, the effect is to reduce the profitability of other contracts by forcing them to bear a disproportionate share of fixed costs. *Id.* Conversely, all applicable variable expenses should be deducted when arriving at lost profits. *Id.* We agree that this is the better rule.

Troutman offered the following evidence as to lost profits. Toby Troutman, one of Troutman's owners, testified that he would have received a profit of $187,289.57 if Interstate had honored the contract and required Mr. Butler to purchase his gas from Troutman. This figure was based on the gross profit for the fourteen months his company supplied the Baseline and Chicot service station. From this $35,865.24 gross-profit figure, he deducted the $9,923.50 commission payed to Mr. Butler and the $1,514.31 commission paid to Interstate. He took this $24,427.73 figure and divided it by fourteen months, equaling $1,744.82, representing his monthly net profit. He multiplied his monthly net profit by the remaining 106 months left on the parties' contract, equaling $184,950.92. To this amount, he added $2,338.65 in branding costs that Fina billed him for the Baseline and Chicot station. The total equaled $187,289.57.

■ Mr. Troutman admitted that he had other costs including drivers' costs, truck and equipment costs, labor costs for maintaining and servicing pumps, insurance costs, secretarial salaries, and office rent. However, he described these costs as fixed costs,

contending that he would have had to pay these expenses whether or not he sold gasoline to the Baseline and Chicot station. He further stated that the station operators paid their own utilities. Interstate did not challenge this testimony, nor did it present contrary evidence indicating that Troutman's expenses were variable rather than fixed overhead expenses. Under these circumstances, we cannot say that the trial court erred in admitting Troutman's evidence relating to lost profits.

## III. Illegality

Finally, Interstate claims that the trial court should have dismissed Troutman's complaint as a matter of law because "the result obtained by Troutman's construction of the contract" was illegal under federal antitrust laws. Troutman responds that Interstate was required to plead illegality as an affirmative defense. See Ark. R. Civ. P. 8(c). The abstract reveals that Interstate did in fact plead this defense in its amended answer.

At trial, Troutman claimed that Interstate was obligated to require its lessees to buy from Troutman and breached this obligation. Interstate objected to this construction of the contract, maintaining that if it were forced to compel its lessees to buy gas from Troutman, it would be taking part in an unlawful tying arrangement. The trial court rejected Interstate's argument, and the jury ultimately returned a verdict for Troutman on its claim for breach of contract.

■ ■ The Federal Trade Commission Act prohibits unfair methods of competition in commerce and unfair acts or practices in commerce. *Atlantic Refining. Co. v. Federal Trade Commission*, 381 U.S. 357 (1965); 15 U.S.C. § 45. The majority of antitrust claims are analyzed under a "rule of reason," under which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition. *Double D Spotting Service, Inc. v. Supervalu*, 136 F.3d 554 (8th Cir. 1998) (*citing State Oil Co. v. Khan*, 118 S.Ct. 275 (1997)). This rule-of-reason analysis involves an inquiry into the market structure and the defendant's market power in order to assess the actual effect of the

restraint. *Id. (citing Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)). Particularly, an unlawful tying arrangement involves the sale or lease of one item, the tying product, on the condition that the buyer or lessee purchase a second item, the tied product, from the same source. *Id. (citing Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996) and *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483 (8th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)).

In the present case, Interstate did not proffer evidence that it had sufficient market power in the tying product or service market to restrain competition. It was Interstate's burden to define the relevant market, including a product market and a geographic market. *See Double D*, 136 F.3d at 560 *(citing Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340 (8th Cir. 1995)). This it did not do. Under these circumstances, we cannot say, as a matter of law, that the contract as construed in the present case constituted an unlawful tying arrangement and was illegal as violative of federal antitrust laws. Based on the foregoing, we affirm the trial court's decision to deny Interstate's motion for new trial.

Affirmed.

NEWBERN and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. I must respectfully dissent because I cannot agree with the majority's holding that Troutman was properly allowed to prove damages in excess of $50,000.

In its original and amended complaints, Troutman alleged that its damages were "undetermined" but "exceed[ed] $10,000." The majority acknowledges that Ark. R. Civ. P. 8(a), a general rule of pleading that applies to *all* claims for relief, determines jurisdiction and provides in relevant part that:

> In claims for unliquidated damage, a demand containing no specified amount of money *shall* limit recovery to an amount less than required for federal court jurisdiction in diversity of citizenship cases, unless language of the demand indicates that the recovery sought is in excess of such amount.

(Emphasis added.) By using the word "shall," it is clear that the rule is mandatory and not discretionary. *King v. State*, 322 Ark. 51, 907 S.W.2d 127 (1995); *Menard v. City of Carlisle*, 309 Ark. 522, 834 S.W.2d 632 (1992). Hence, pursuant to the mandatory language of Rule 8(a), I conclude that Troutman should have been limited to proving damages less than $50,000, which was the amount required for federal diversity jurisdiction at the time of this case.

The majority circumvents this result by holding that Rule 8(a) "must be read together with Ark. R. Civ. P. 15(b)." Rule 15(b) provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may grant a continuance to enable the objecting party to meet such evidence.

I read Rule 15(b) to allow the pleadings to be amended to conform to the evidence in three instances.

First, the pleadings may be amended upon a motion. Troutman made no such motion in this case. Second, the pleadings may be amended by express or implied consent. Interstate did not expressly or impliedly consent to Troutman amending its complaint to assert damages in excess of $50,000. In fact, Interstate expressly objected to such amendment by filing a motion in limine, renewing the motion at the conclusion of the trial, and by filing a motion for a new trial. Finally, it appears that Rule 15(b) allows the pleadings to be amended upon a court ruling in response to an evidentiary objection. I can only assume that the majority concludes that the trial court's denial of Interstate's motion in limine was such a ruling.

The majority reasons that this is an equitable result because Troutman asserted in its August 12, 1996 answer to Interstate's first set of interrogatories that it was demanding $184,950 in damages. I disagree with this conclusion for two reasons.

First, on September 10, 1996, only one month after it filed its answers to Interstate's interrogatories, Troutman filed an amended complaint in which it continued to assert that its damages were undetermined but in excess of $10,000. I do not see how such contradictory assertions can sufficiently put a defendant on notice of the possibility of federal diversity jurisdiction.

Second, and more importantly, the majority ignores the broad implications of their holding. In future cases, plaintiffs may wait until the final stages of discovery or possibly well into trial before they assert damages sufficient to invoke federal diversity jurisdiction. At this point in the litigation, it would be highly improbable that a defendant would be willing to assert its right to have the case removed to federal court. Such a result would completely abrogate the policy behind Rule 8(a), which the majority admits is to "prevent a plaintiff from using unliquidated demands to avoid removal of diversity of citizenship cases to federal court."

In sum, the majority's holding that Rule 8(a) "must be read together with Ark. R. Civ. P. 15(b)" is the death knell of the requirement in Rule 8(a) that jurisdictional issues involving a claim for an unspecified amount of unliquidated damages be promptly determined, i.e., long before trial. Accordingly, I must respectfully dissent.

NEWBERN, J., joins this dissent.