2009 Ark. App. 412

**SEALING DEVICES, INC., Appellant,**

v.

**James McKINNEY and Industrial Fluid Solutions, Inc., Appellees.**

**No. CA 08–1264.**

Court of Appeals of Arkansas.

May 20, 2009.

---

1. There was no objection made that the back up audio tape was not evidence pursuant to

Arkansas Code Annotated § 16–89–125(e).

Newell & Hargraves, by: Burt Newell, Hot Springs, for appellant.

Byrd Law Firm, P.A., by: John R. Byrd, Jr., Hamburg, for appellee.

RITA W. GRUBER, Judge.

Sealing Devices, Inc., brings this appeal from a jury verdict in its favor against appellee James McKinney. The jury awarded damages in the sum of $8,044.31. Sealing Devices, Inc. (SDI), asserts two points on appeal: first, it contends that the trial court erred in denying its motion for new trial on the basis of the inadequacy of damages awarded. Second, it contends that the trial court erred in refusing its proffered instruction on loss of profits. We find that the trial court did not abuse its discretion either in denying SDI's motion for new trial or in refusing its proffered instruction. Therefore, we affirm the trial court's judgment.

SDI is a distributer of industrial products to paper companies and chemical companies. From 1997 until he resigned in January 2004, James McKinney worked as a salesman for SDI, managing accounts for over twenty of SDI's customers, including Georgia Pacific, from whom SDI received a large volume of sales. In December 2003, Mr. McKinney formed an Arkansas corporation, Industrial Fluid Solutions, Inc. On January 7, 2004, Georgia Pacific terminated its contract with SDI and began purchasing products from Mr. McKinney through Industrial Fluid Solutions, Inc.

On August 12, 2004, SDI filed a complaint against James McKinney, Industrial Fluid Solutions, Inc., and Georgia Pacific, alleging breach of contract on the part of Georgia Pacific, breach of fiduciary duty by Mr. McKinney, and conspiracy to interfere with a business relationship by all three defendants. SDI settled with Georgia Pacific before trial. After a two-day trial, the jury returned a verdict in favor of SDI, finding that Mr. McKinney breached his fiduciary duty, and awarded damages of $8,044.31. SDI filed a timely motion for new trial pursuant to Rule 59(a)(5) of the

Arkansas Rules of Civil Procedure, alleging that the damages awarded were inadequate. The motion was deemed denied by the trial court's failure to act within thirty days. *See* Ark. R. Civ. P. 59(b). SDI filed this appeal.

## I.

■ SDI's first point on appeal is that the jury erred in calculating SDI's damages. SDI argued in its motion for new trial that the proper amount the jury should have awarded to SDI was $452,000, or $113,587 for each of the years since Mr. McKinney left SDI. SDI essentially contends on appeal that the jury was required to accept its evidence of lost ₃profits, which excluded its "normal operating overhead" and was based on the gross profits earned by SDI during Mr. McKinney's tenure rather than on the net income earned during that same period.

Under Rule 59(a)(5), the inadequacy of the recovery is a ground for a new trial even in the absence of other error. *See Warner v. Liebhaber*, 281 Ark. 118, 661 S.W.2d 399 (1983). In such a case, where the primary issue on appeal is the alleged inadequacy of the jury's award, we will sustain the trial court's denial of a motion for new trial absent a clear and manifest abuse of discretion. *Luedemann v. Wade*, 323 Ark. 161, 166, 913 S.W.2d 773, 776 (1996). An important consideration is whether a fair-minded jury might reasonably have fixed the award at the challenged amount. *Warner*, 281 Ark. at 120, 661 S.W.2d at 399.

SDI bases its argument on its contention that its damages of lost profits were governed by the supreme court's holding in *Interstate Oil & Supply Co. v. Troutman Oil Co.*, 334 Ark. 1, 972 S.W.2d 941 (1998). SDI asserts that, pursuant to *Troutman*, the jury was required to consider SDI's evidence of gross profits, which excluded certain deductions claimed by SDI to have constituted "normal operating overhead," and that it was error for the jury to have considered evidence of taxable income set forth on its corporate tax returns.

*Troutman* was a breach-of-contract case in which the losing party, found to have breached the contract, appealed and contended that the trial court should have excluded ₄Troutman's evidence of lost profits because Troutman failed to include the cost of overhead in its calculation. The supreme court held that it could not say that the trial court erred in admitting Troutman's evidence relating to lost profits, reasoning that the overhead was described in undisputed testimony as fixed costs. The court provided the following rationale for the rule that overhead expenses "need not" be deducted from gross income to arrive at the net profit properly recoverable: "overhead continues whether or not *the contract in question* has been breached." *Id.* at 7, 972 S.W.2d at 944 (emphasis added). The court also noted that all variable expenses should be deducted when arriving at lost profits. *Id.*

First, SDI's reliance upon *Troutman* in this case is misplaced. *Troutman* was a breach-of-contract case between two parties in which the contract required specific sales to be made for a specific duration. In this case, SDI sued and obtained a judgment for breach of fiduciary duty by Mr. McKinney. Mr. McKinney breached no contract obligating him to provide profits from particular customers for a particular duration. Indeed, while not abstracted, the testimony of Ms. Blakely indicates that SDI did not even have an employment contract with Mr. McKinney and that SDI's contract with Georgia Pacific was terminable at the will of either party at any time for any reason. Thus, not only is this case not a case for loss of profits based on a breach of contract, as was the case in *Troutman*, but SDI did not have a

contract of any specific duration with either Mr. McKinney or Georgia Pacific.

Moreover, the supreme court in *Troutman* did not require overhead expenses to be excluded from all lost-profit calculations. The court merely held that it was not error for the trial court to allow Troutman to introduce evidence of lost profits that excluded its fixed costs. The trial court in this case allowed SDI to admit evidence of its gross profits, that is, profits excluding deductions it claimed constituted its business overhead. Through its accountant, SDI introduced Exhibit 18, which was a spreadsheet of gross profits attributable to Mr. McKinney less Mr. McKinney's salary and other expenses designated by SDI as attributable to Mr. McKinney. SDI also introduced its corporate income tax returns for the years 1995 through 2003. SDI's accountant explained the difference between the amount designated "total income" and the amount designated "taxable income" on the returns. She testified that certain business expenses—such as wages, taxes and licenses, mileage, postage, repair and maintenance, supplies, compensation of officers, travel, and various other expenses—were deducted from total income to arrive at taxable income. The only tax return included in SDI's addendum is the 2003 return in which total income equaled $358,760 and taxable income equaled $9,721. SDI argued in its closing argument to the jury that its loss of profits should be calculated on the basis of its total income and not its taxable income.

Conversely, Mr. McKinney's counsel argued at closing that SDI had already made a tremendous amount of money from Mr. McKinney's employment. He argued that it was "phenomenal" that SDI paid taxes on only $9,000 in 2003 and that SDI was now asking for damages to be based on its gross income rather than on its taxable income. Mr. McKinney contended that SDI did not deserve any damages at all.

We hold that the trial court's denial of a new trial on the basis of inadequate damages was not a clear and manifest abuse of discretion. SDI was allowed to present its evidence of loss of profits and to argue this evidence to the jury.

Perhaps the jury was not persuaded by SDI's argument that all of the deductions from total income on the tax returns introduced by SDI were fixed, rather than variable, expenses. A review of the record suggests that the officers' compensation alone varied from $85,748 in 2000 to $161,162 in 2003. This information was introduced by SDI. Or, perhaps the jury determined that Mr. McKinney's breach of fiduciary duty did not warrant the amount of lost profits argued by SDI where the testimony of SDI's owner suggested that SDI's relationships with both Mr. McKinney and Georgia Pacific were terminable at any time by any party for any reason. In any case, a jury has the right to believe or disbelieve all or any part of the testimony at trial, even when the testimony is uncontradicted, and is in a superior position to judge the credibility of the witnesses. *Whitney v. Holland Retirement Center, Inc.*, 323 Ark. 16, 912 S.W.2d 427 (1996). Furthermore, we do not know the exact manner in which the jury arrived at $8,044.31 in lost profits and we will not speculate on how it reached this verdict. The trial court did not abuse its discretion in denying SDI's motion for new trial.

## II.

SDI's second point on appeal is that the trial court erred in refusing to give the following instruction it proffered on lost profits:

> If you have decided in favor of Plaintiff, Sealing Devices, Inc., on its claim for damages against either James McKinney or Industrial Fluid Solutions,

Inc., then you need to know the definition of the term "loss of profits."

Loss of profits in this case would be, for Sealing Devices, Inc., its gross revenues less its cost of goods sold the specific salary expense it paid to James McKinney to produce the gross profits less his efforts contributed to the business.

You should not reduce profits by deducting fixed overhead expenses because those expenses are present and continue whether or not there has been any loss of gross receipts.

The court rejected SDI's instruction in favor of the relevant model instruction on measure of damages, AMI 2201, which states as follows:

If you decide for SEALING DEVICES, INC. on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them the following element of damage sustained which you find were proximately caused by the *fault* of JAMES MCKINNEY and INDUSTRIAL FLUID SOLUTIONS, INC.:

The *value of any profits lost* [inserted from AMI 2206]

Whether this element of damage has been proved by the evidence is for you to determine.

Under Arkansas law, a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Barnes v. Everett*, 351 Ark. 479, 492, 95 S.W.3d 740, 748 (2003). We will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.* Even where a proffered instruction accurately reflects the case law, however, failure to give the instruction is not error when an AMI instruction covering the same subject matter is on point, due to our longstanding preference in favor of AMI instructions over non-AMI instructions. *See Wal–Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 178, 806 S.W.2d 373, 376 (1991).

We note first that SDI's proffered instruction, without punctuation to indicate precisely the calculation SDI desired the jury to perform, is somewhat confusing. However, even assuming it correctly reflects the calculation of loss of profits approved in *Troutman*, we explained above that *Troutman* was a breach-of-contract case, not a case regarding the breach of a fiduciary duty. Further, *Troutman* did not hold that overhead expenses are never to be deducted from gross profits in order to arrive at loss of profits; rather, the supreme court held that it was not error for the trial court to allow evidence of lost profits in which certain fixed expenses were not deducted from gross profits. We do not find that *Troutman* mandated SDI's proffered instruction in this case. Finally, there was an AMI instruction covering the subject, which the trial court gave. Therefore, we hold that the trial court did not abuse its discretion in refusing to give SDI's proffered instruction on loss of profits.

Affirmed.

GLADWIN and GLOVER, JJ., agree.