# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3348MN

_____

| | |
|---|---|
| Adam Steele, | * |
| | * |
| Appellant, | * |
| | * |
| Northern Herald Publications, Inc., a | * |
| Minnesota corporation, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| City of Bemidji, a municipal | * |
| corporation; Alan Felix, individually | * |
| and as City Attorney for the City of | * On Appeal from the United |
| Bemidji, Minnesota; Phil Shealy, | * States District Court |
| individually and as City Manager of | * for the District of |
| the City of Bemidji, Minnesota; | * Minnesota. |
| Michael Porter, individually and as an | * |
| officer of the Bemidji Police | * |
| Department; Jon Hunt, individually and | * |
| as an officer of the Bemidji Police | * |
| Department; Robert Tell, individually | * |
| and as Chief of Police of the City of | * |
| Bemidji, Minnesota; Tim Faver, | * |
| individually and as County Attorney, | * |
| County of Beltrami, Minnesota; David | * |
| Frank, individually and as Assistant | * |
| County Attorney, County of Beltrami, | * |
| Minnesota; Lynette Russell, also known | * |
| as Lynette Rex, an individual; Rich | * |
| Johanneson, individually; Joseph | * |

Leuken, doing business as Leuken's Food Stores; William Batchelder, individually; Terry Smart, individually; Forem Communications Company, a North Dakota corporation; Omar Forberg, individually; Petro Pete's, the elusive and evasive entity which is doing business as Petro Pete's Park Rapids; Kitty Lemer, individually; County of Beltrami, State of Minnesota; Developers' Diversified Realty Corporation, doing business as Paul Bunyan Mall, Bemidji, an Ohio corporation; Johanneson's, Inc., a Minnesota corporation; Steve Michaels, doing business as Superamerica of Park Rapids; J & B Foods, Inc., a Minnesota corporation; Ron Dargis, doing business as Ron's Foods, doing business as Festival Foods; Cooperative Sampo, doing business as Cenex, Park Rapids, Inc., a Minnesota corporation; Jeff Wizner; Mrs. Jeff Wizner, doing business as Countryside Restaurant, Blackduck, Minnesota; Jackie Hall, doing business as Countryside Restaurant of Bemidji, Minnesota; Judy Black, doing business as Maid-Rite Café Bemidji, Minnesota; Shari Mistic, doing business as Southside Restaurant, Bemidji, Minnesota; Tim Saga, individually; Saga of Bemidji, doing business as Highway Host Restaurant, Bemidji, Minnesota, Inc., a Minnesota corporation,

        Appellees.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On Appeal from the United States District Court for the District of Minnesota.

_____

Submitted:   May 1, 2001
Filed:   July 30, 2001
_____

Before MORRIS SHEPPARD ARNOLD, RICHARD S. ARNOLD, and FAGG,
    Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Adam Steele appeals the District Court's adverse grant of summary judgment as to some claims, and the dismissal of other claims, in this suit brought under 42 U.S.C. §§ 1983, 1985, and 1986; the Sherman Antitrust Act; and state law. We affirm in part and reverse in part.

Steele and Northern Herald, Inc., filed an amended complaint naming the City of Bemidji, City Attorney Alan Felix, City Manager Phil Shealy, Chief of Police Robert Tell, and Police Officers Michael Porter and Jon Hunt (the "City defendants"); the County of Beltrami, County Attorney Tim Favor, and Assistant County Attorney David Frank (the "County defendants"); and twenty-one private individuals and businesses (the "non-government defendants"). Viewed in the light most favorable to plaintiffs, the record establishes the following.

The Northern Herald is a periodical containing political reporting, other news, and advertising. Plaintiffs publish the Northern Herald and have three means of distribution: for-profit sales through existing retailers, complimentary distribution, and direct curbside sales on public streets and sidewalks. In February 1998, Steele was distributing papers near a mall, when a police officer ordered him to stop doing so. Steele discussed the matter with the City Manager, who (after a discussion with the

Chief of Police) confirmed that Steele could not sell the Northern Herald at that location. After Steele complained to the City, he received a letter from City Attorney Felix stating that Steele's use of public property to "advertise and sell [his] alleged publication" without a solicitation permit and an obstruction permit violated, respectively, City Code sections 6.39 and 10.31. Felix explained that a section 10.31 permit was conditioned upon the provision of adequate insurance and bond, and that in light of Steele's recent bankruptcy, the City was concerned with his ability to provide adequate financial security. Felix warned Steele that the City would require "at a minimum public liability coverage with policy limits equal to those required of the City," and that given Steele's "past history of non-payment, a substantial bond [would be] mandatory." Finally, Felix pointed out that a violation of either ordinance was a misdemeanor and suggested that Steele find "willing local, private outlets" to distribute his paper, commenting that "in light of this community's apparent unwillingness to embrace your ideas, another option may be your consideration of relocation to another community . . . more willing to embrace your way of thinking."

Several days after receiving Felix's letter, Steele was standing by the sidewalk in front of the Bemidji Post Office--giving away copies of the Northern Herald, and wearing a sign that said "FREE -- TODAY ONLY"--when a City police officer threatened to arrest him for "soliciting." Steele responded that he was giving, not selling, the paper; the officer said he would discuss the matter with Felix and then take Steele "to jail, today" if appropriate. Steele stopped distributing the paper and called Felix, who concurred with the police officer because distributing the paper from the sidewalk violated the City's "obstruction" ordinance (even though Steele had been holding all of the copies, and had not deposited them on public property). City officials continued to threaten to arrest Steele if he distributed the paper on public property in the City without first obtaining the requisite solicitation and obstruction permits.

Plaintiffs asserted further in their complaint that, after Steele notified City police of the theft of a stack of complimentary Northern Herald newspapers from a local

-4-

business, the police merely referred the matter to the County Attorney's Office, which refused to prosecute the theft; that certain named persons and businesses had disrupted distribution of the Northern Herald by refusing to sell the paper, by refusing to allow Steele to leave complimentary copies of it at their businesses, or by threatening to boycott stores that distributed it; and that business owners had denied service to Steele at restaurants and bars, a landlord had threatened a tenant (a friend of Steele's) with eviction if the tenant continued her relationship with Steele, and a printing press refused to print the Northern Herald.

Upon defendants' motions to dismiss or for summary judgment, the District Court held that (1) Steele (a non-lawyer) could not represent the Northern Herald in these proceedings; (2) Steele failed to state a claim against the non-government and County defendants; and (3) City defendants were entitled to summary judgment because the City ordinances were constitutional, and because the individual City defendants were entitled to qualified immunity. See Steele v. City of Bemidji, 114 F. Supp. 2d 838 (D. Minn. 2000). This appeal followed, in which we review de novo both the District Court's grant of the motions to dismiss and its grant of summary judgment. See Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 557 (8th Cir. 1998); Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).

At the outset, we agree with the District Court that Steele may not represent Northern Herald in federal court. See Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) (non-lawyer has no right to represent another entity in federal court). Therefore, we will review the District Court's rulings only as to Steele's individual claims. And, although Steele argues on appeal that he should have been allowed to amend his complaint, he cannot fault the District Court for failing to grant him leave to amend when he did not seek permission to do so.

Turning to the merits of Steele's action, we agree with the District Court that Steele cannot maintain an action against the non-government defendants under sections

1983, 1985, or 1986, see Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993) (conspiracy actionable under § 1985 must be motivated by class-based animus; persons who wish to engage in constitutionally protected conduct are not a class for § 1985 purposes); Brandon v. Lotter,157 F.3d 537, 539 (8th Cir. 1998) (to be liable under § 1986, defendant must have neglected or refused to prevent a § 1985 conspiracy); Parker v. Boyer, 93 F.3d 445, 448 (8th Cir. 1996) (§ 1983 redresses only injuries caused by exercise of some right or privilege created by state, by rule of conduct imposed by state, or by person for whom state is responsible). We reject Steele's argument that the mall is a state actor insofar as it reported Steele's activities to the police, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (to be considered state actor, private party must have "reached an understanding" with state officials to deny civil rights and have been "willful participant in joint activity with the State"). Further, defendants are not liable for the single instance of failing to prosecute the theft of copies of the Northern Herald. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (municipality is liable under § 1983 only for unconstitutional custom or policy); Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (absolute immunity protects prosecutor from damages based on decision not to prosecute).

Steele also contends, as he did below, that the non-government defendants' alleged "boycott" is per se illegal under the Sherman Antitrust Act. We disagree. A boycott is a narrow category of per se violation "limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor." See FTC v. Ind. Fed. of Dentists, 476 U.S. 447, 458 (1986). Steele, moreover, has not shown an antitrust injury, see Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488-89 (1977) (antitrust laws protect competition, not competitors; private plaintiff must show injury reflecting anticompetitive effect either of violation or of anticompetitive acts made possible by violation), and he does not have standing to raise any possible claims by the Northern Herald in this regard. We also agree with the District Court that the boycott does not constitute wrongful activity upon which Steele could predicate a state-law claim for

malicious interference with a business relationship.  See <u>Hunt v. Univ. of Minn.</u>, 465 N.W.2d 88, 95 (Minn. App. 1991) (claim for interference with prospective business relationship lies where defendant intentionally committed wrongful act that improperly interfered with prospective relationship).

As to Steele's First Amendment challenge, the parties agree that his claims turn on the constitutionality of the City ordinances.  Section 6.39 prohibits any "peddler, business solicitor, contribution solicitor . . . or transient merchant" from engaging in "any such business" without obtaining a permit.  To obtain a permit, an applicant must provide, among other things, his name; date of birth; physical description and photograph; address; a description of "the nature of the business and goods to be sold"; the length of time for which the right to do business is desired; two references to certify the applicant's "good character," or other evidence of good character and business responsibility; a statement of whether the applicant was convicted of any crimes; and fees as established by the City Council.  After conducting any investigation deemed necessary, the Chief of Police, within five days, must certify that the applicant's good character and business reputation is "satisfactory" or state his reasons for denying the permit.  An applicant can appeal the Chief of Police's denial to the City Council, although the ordinance does not specify standards for the Council's review.  If the Chief of Police endorses the application, it is put on the agenda for the City Council's consideration at its next meeting.  Upon Council approval, the applicant must submit a $1,000 bond or certified/cashier's check before receiving a permit.  The permit expires sixty days after issuance.

Section 10.31 makes it unlawful for anyone to "place, deposit, display or offer for sale any fence, goods or other obstructions upon, over, across or under any public property without first having obtained a written permit from the Council."  Before granting any permit, the Council "may impose such insurance or bonding conditions thereon as it, considering the projected danger to public or private property or to

persons, deems proper." The ordinance does not specify how soon the Council must consider a permit application, nor does it state the duration of the permit.

Neither ordinance on its face proscribes *giving away* newspapers that the donor is *holding* while standing on a City sidewalk. Nevertheless, the City has applied, and apparently wants to continue to apply, the ordinances to Steele, whether or not he attempts to sell his newspapers and whether or not he places them on City property. The City's permit schemes are prior restraints on protected speech, but the City argues--and the District Court agreed--that they are constitutional as valid time, place, and manner restrictions. See Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (government may impose content-neutral time, place, or manner restrictions so long as they are narrowly tailored to serve significant government interest and leave open ample alternative channels for expression). But in our view, several salient features of the permit schemes run afoul of the First Amendment.

First, the permit schemes vest the City Council with too much discretion to discriminate against disfavored speech or unpopular speakers. See City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755-59 (1988) (licensing scheme giving government unlimited discretion is facially unconstitutional; mere existence of such discretion, combined with power of prior restraint, intimidates speakers into censoring themselves even if discretion and power are never actually abused); Shuttlesworth v. City of Birmingham, 394 U.S. 147, 149-50 (1969) (invalidating ordinance requiring city commission to issue permit unless in "its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience required that it be refused"). Also problematic is the solicitation permit's duration of only sixty days: a person might well be reluctant to distribute a newspaper criticizing a city council that has the unfettered discretion every two months to deny the person's right to distribute his product in public. See Lakewood, 486 U.S. at 758 (expressing similar concerns about city's year-long newsrack permits). Morever, the solicitation ordinance allows the Chief of Police to deny any permit application under the vague ground that the applicant is not of

"good character and business reputation." See Staub v. City of Baxley, 355 U.S. 313, 321 (1958) (invalidating ordinance because of unfettered discretion granted mayor, who was empowered to deny permits to applicants requesting permission to solicit others to join their organization, based on "the character of the applicant, the nature of the business of the organization for which members are desired to be solicited, and its effects upon the general welfare of citizens of the City of Baxley"); Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147 (1939) (invalidating ordinance allowing police chief to deny permit to door-to-door solicitor if he determined applicant was "not of good character").

Second, section 6.39 requires a $1,000 bond or certified check before the applicant can receive a solicitation permit, and a section 10.31 obstruction permit is subject to "such insurance or bonding conditions" as the City Council may impose "considering the projected danger to public or private property or to persons." In this regard, Felix's letter stated that Steele would need "a substantial bond" and "public liability coverage with policy limits equal to those required of the City." These requirements cannot be imposed as a prior restraint on protected speech. See Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 133 (1992) (parade fee of "up to one thousand dollars for each day" was unconstitutional because ordinance did not articulate any standards for fixing amount of permit fee and allowed administrator to examine content of prospective speaker's message in assessing fee); cf. Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 113-14 (1943) (ordinance charging flat fee per day for license to canvass or solicit was unconstitutional because "the license tax [wa]s fixed in amount and unrelated to the scope of the activities of petitioners or their realized revenues").

Third, neither ordinance imposes a time limit on the City Council's decision to grant or deny a permit. See Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 802 (1988) (regulation prohibiting speech until speaker obtains license must

provide that licensor will "within a specified brief period, either issue a license or go to court") (citation and internal quotation omitted).

Accordingly, we reverse the District Court's grant of summary judgment as to Steele's First Amendment claims against the City defendants. We leave the question of qualified immunity to the District Court on remand. In all other respects, we affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.