### Howard CANNON Plaintiff

v.

### ELK HORN BANK AND TRUST, Anthony Michael and Defendants Brad Simmons Defendants

### No. CIV. 02–6139.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

Oct. 25, 2002.

---

Q. Byrum Hurst, Hurst Law Officer, Hot Springs, AR, for Plaintiff.

Gregory E. Bryant, Little Rock, AR, Rodney P. Moore, Wright, Chaney, Berry, Daniel, Hughes & Moore, Arkadelphia, AR, for Defendant.

## ORDER

DAWSON, District Judge.

On this 25th day of October 2002, there comes on for consideration the motion to dismiss filed by separate defendant Elk Horn Bank and Trust. (Doc. # 2.) For the reasons set forth within this opinion and order, the Court finds that the motion to dismiss should be granted, but the Plaintiff will first be given leave to amend the complaint.

## I. Background.

■ Plaintiff filed his complaint on July 10, 2002 alleging three causes of action: (1) breach of fiduciary duty; (2) interference with a contract; and (3) anti-trust violations under the Sherman Act, 15 U.S.C. §§ 1 and 2. While the complaint' jurisdictional statement does not refer to any specific statutes, federal subject matter jurisdiction over the anti-trust claim appears to be based on the federal question statute, 28 U.S.C. § 1331.[1] We have supplemental jurisdiction over the related state law claims. *See* 28 U.S.C. § 1367.

The verified complaint is vague and confusing, but Plaintiff complains of damages resulting from certain business dealings involving himself, Cannon Security Group, Inc. (the Corporation), Defendant Elk Horn Bank (the Bank), and separate defendants Anthony Michael and Brad Simmons.

The factual allegations set out within the complaint are summarized and construed in the light most favorable to the Plaintiff. Plaintiff alleges as follows:

● Plaintiff was the sole shareholder of the Corporation, which marketed and distributed security equipment. Much of the Corporation's business was conducted in interstate commerce. The Corporation had great potential but needed capital and financial management in order to be successful.[2] For this reason, Plaintiff sought financial assistance and advice from the Bank. Originally, Plaintiff dealt with Bank Vice–President Bill Fowler, who arranged Bank loans to capitalize the business of the Corporation. At some point, Fowler was replaced by Joe Miles as the Bank

representative who arranged for the Bank loans to Plaintiff and/or the Corporation. Miles became President of the bank, and it was Miles who advised Plaintiff that he must engage an accountant and venture capitalist as a condition to obtaining further Bank financing. (Compl. at 2–3.)

● In 1997, Plaintiff met separate defendant Anthony Michael. Although Plaintiff was led to believe otherwise, Michael and Miles knew each other well and shared a lengthy history of business dealings. Michael represented to Plaintiff that he could expand the Corporation if Plaintiff allowed him to become directly involved in corporate financial affairs. Michael became the Chief Financial Officer for the Corporation, and the corporate offices were relocated to an office suite occupied by Michael Management, a separate business owned by Michael. Michael advised Plaintiff to expand the Corporation, and the directed Plaintiff to Defendant Brad Simmons for financing. Although Plaintiff was led to believe that the relationship between Michael and Simmons was relatively new, the two in actuality had done business in the past. (Compl. at 3–4.)

● Acting on Michael's suggestion, Plaintiff asked Simmons for the capital necessary to fund the corporate expansion advised by Michael. Working together with the intent to capture and take over the Corporation, Simmons and Michael "engaged in deception and subterfuge." By means of unlawful agreements, Plaintiff became heavily indebted and obligated to Simmons. *Id.*

---

**1.** The complaint also alleges that federal jurisdiction exists because Defendant Elk Horn Bank is insured by the Federal Deposit Insurance Corporation. This fact by itself is insufficient to confer federal subject matter jurisdiction over this case.

**2.** Throughout the complaint, Plaintiff fails to distinguish between himself and the Corporation.

• In April of 2000, Plaintiff met with Bank President Miles to request a "lock box" Bank loan that would be secured by two (2) accounts receivable totaling over $30,000. Plaintiff needed the new Bank loan in order to make delivery on a $74,000 purchase order for two camera systems that had been sold to the State of Texas. (Compl. at 4.) Plaintiff had been advised that this type of loan was acceptable to the Bank, and Plaintiff made it clear to Miles that, if the Bank did not make the loan, the Corporation would not be able to fulfill its contract with the State of Texas. As a result, the Corporation would likely default on existing Bank loans totaling more than one hundred thousand dollars ($100,000.00). Plaintiff alleges that:

[t]his amount of debt required that all loan decisions be forwarded to the loan committee level. Furthermore, because the [Corporation's] loans had been declared in jeopardy the request for a loan would be required to be heard by the full Board of Directors.

*Id.,* at 5. Despite Bank policy and procedure, Miles never forwarded Plaintiff's loan request to the Bank Loan Committee or the Board of Directors.

• Plaintiff alleges that, because he was a Bank customer, the Bank owed him a duty of good faith and fair dealing, including the duties of loyalty and full disclosure. In addition, pursuant to Bank guidelines and policy, Miles had a duty to present Plaintiff's loan request to the Bank Loan Committee and the Board of Directors. The Bank "had an obligation to protect its stockholders, as well as its lender customers by creating monitoring devices and restrictions on their employees and agents to prevent violating [Bank] policy ..." *Id.,* at 6. The Bank allegedly breached its duty as follows:

A. by inducing the Plaintiff to seek business advice from particular individuals and businesses that were associated in friendship or otherwise with its agents and employees;

B. by failing to monitor or properly supervise their employees and agents who would received request[s] for loans or other plans to satisfy debt and not present them to the [Bank's] Board of Directors;

C. allowing their agents and employees [to] deliberately violate the terms of the policy of the bank and forbidding lendors [sic] to provide methods of repayment of loans which would prevent a potential loss

(Compl. at 6.) Because Miles and the Bank failed to make the "lock box" loan as requested, Plaintiff was unable to make delivery on the contract with the State of Texas. In addition, Plaintiff was unable to repay his Bank loans, and the Bank foreclosed on all of Plaintiff's property thereby forcing Plaintiff out of business and causing him a substantial business loss. *Id.,* at 10.

• Because of its business dealings with the Plaintiff, Plaintiff contends that the Bank had knowledge of Plaintiff's contracts with third parties and intentionally interfered with those contracts. The Bank's actions caused Plaintiff to breach and lose its contract with the State of Texas. In addition, the Corporation had a developmental contract with the University of Arkansas that would have produced profits of around $200,000; as well as a contract with the United States government that was lost due to the actions by Bank President Miles. Finally, the Plaintiff alleges that the Bank's actions caused Plaintiff to default in his Bank loans, and the Bank took judgment against the Plaintiff. Plaintiff claims damages caused as a result of the "tortuous interference of his contracts by the [Bank's] actions." *Id.,* at 8.

912

- Defendants Michael and Simmons, acting in concert, arranged for Plaintiff to "execute a general promissory agreement with the Defendant in which the Plaintiff would receive a line of credit with Boatman's National Bank of Arkansas in the amount of One Hundred Twenty Thousand Dollars ($120,000.00)." (Compl. at 9.) The loan was secured by a security agreement giving Simmons an option to purchase 33% of the Corporation. Later, Michael "unilaterally" modified the security agreement to give Simmons 100 % of the Corporation as collateral for the promissory note. *Id.*

- By this arrangement, Simmons and Michael were attempting to "take over" Plaintiff's ownership of the Corporation. As a result of Michael's advice and the unilateral modification of the security agreement, Plaintiff was unable to use the corporate stock to obtain additional capital funds or credit. This fact combined with the actions of Bank President Miles deprived Plaintiff access to any credit or loan opportunities in order to conduct the business of the Corporation. Plaintiff alleges that the "conduct of Defendants involved an unreasonable restraint of commerce or trade and the actions of the Defendant were designed to prevent and prohibit the Plaintiff from the conduct of its business." *Id.*, at 10. Simmons, Michael, and Miles intended to place the Plaintiff in such financial hardship that he would be unable to pay any indebtedness with the result that Simmons would become the sole shareholder of the Corporation. *Id.*

- In the prayer of the complaint, Plaintiff seeks compensatory damages as well as treble damages under the Clayton Act, 15 U.S.C. § 14, and payment of attorney's fees and costs. (Compl. at 10–11.)

## II. Standard of Review.

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, the court must review the allegations contained in the complaint and construe them in a light most favorable to the plaintiff, and all factual allegations must be accepted as true. *See Haberthur v. City of Raymore, Missouri*, 119 F.3d 720 (8th Cir.1997). A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief." *Springdale Education Association v. Springdale School District*, 133 F.3d 649, 651 (8th Cir.1998). "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." *Id.* Dismissal under Rule 12(b)(6) "serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citation omitted).

## III. Discussion.

Defendant Elk Horn Bank filed its motion to dismiss on August 14, 2002, contending that Plaintiff, in his individual capacity as officer and sole-shareholder of the Corporation, lacks standing to bring anti-trust claims and that no anti-trust injury has been alleged. The Bank also argues that Plaintiff is barred from pursuing the claims for breach of fiduciary duty and tortious interference, because he did not file a counter-claim raising these issues in the state court foreclosure action. In addition, the Bank contends that the tortious interference claim fails because

Plaintiff lacks standing to prosecute an action based on contracts to which the Corporation, and not the Plaintiff individually, was the party in interest. Plaintiff opposes the motion to dismiss.

**The Antitrust Claim.**

▉ We agree that Plaintiff has not alleged facts sufficient to show that he has standing to pursue a federal antitrust claim on his own behalf. The complaint does not describe how Plaintiff, an individual, was the target of anti-competitive activity and not merely one who suffered consequential or derivative injury as a shareholder. *See Lovett v. General Motors Corp.*, 975 F.2d 518 (8th Cir.1992).

▉ Aside from the standing issue, the complaint fails to state an antitrust claim, because Plaintiff has not pleaded facts showing an injury that is directly related to the type of harm the antitrust laws were designed to protect. To demonstrate a violation of section one of the Sherman Act, 15 U.S.C. § 1, the plaintiff must allege facts showing an agreement in the form of a contract, combination, or conspiracy that imposes an unreasonable restraint on trade. *Double D Spotting Service Inc. v. Supervalu, Inc.*, 136 F.3d 554, 558 (8th Cir.1998); *Willman v. Heartland Hosp. East*, 34 F.3d 605, 610 (8th Cir. 1994). The antitrust laws were passed for "the protection of competition, not competitors." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488–89, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (citation omitted). The complaint is deficient because there are no facts alleged showing that Defendants' actions injured competition.

▉ In addition, the complaint fails to state an anti-trust claim for unreasonable restraint of trade or a monopoly, because it fails to plead a relevant market. The actions described in the complaint are not so inherently anti-competitive that they are illegal *per se*. *United States v. Topco Assocs.*, 405 U.S. 596, 607–08, 92 S.Ct.

1126, 1133, 31 L.Ed.2d 515 (1972); *State Oil Co. v. Khan*, 522 U.S. 3, 10, 118 S.Ct. 275, 279, 139 L.Ed.2d 199 (1997). When the complaint fails to allege a *per se* antitrust violation, it is necessary for the Plaintiff to allege a valid relevant market in order to state a claim under either Section One or Section Two of the Sherman Act. *Double D. Spotting*, 136 F.3d at 560.

Although we find that the complaint is inadequate to state a federal anti-trust claim, the Court is willing to give the Plaintiff an opportunity to plead additional facts. Therefore, Plaintiff is given leave to file an amended complaint specifically describing the injury to competition, including the relevant market, and how Plaintiff, in his individual capacity, has directly suffered an anti-trust injury.

**Tortious Interference With a Contract.**

▉ The elements of tortious interference are: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship; (4) resultant damage to the party whose relationship has been disrupted; and (5) the defendant's conduct must be improper. In addition, "another essential element of a tortious-interference-with-contractual-relations claim is that there must be some third party involved". *Faulkner v. Arkansas Children's Hospital*, 347 Ark. 941, 959, 69 S.W.3d 393, 405, (2002) (citations omitted).

▉ We agree that Plaintiff cannot state a claim against the Bank for tortious interference with any of Plaintiff's Bank loans, because a party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract. *Id.* With respect to the other contracts referred to within the complaint,

Plaintiff, in his individual capacity, was not a party to those contracts. Rather, the contracts were between the Corporation and third parties. Plaintiff seems to argue that he should be allowed to pierce his own corporate veil and sue on behalf of the Corporation, but he has not provided the Court with any authority for this proposition, and we find no merit in it. Accordingly, Plaintiff is not a party in interest, the claims are subject to dismissal for lack of standing. However, Plaintiff will have an opportunity to amend the complaint and allege additional facts, if there are any, that would state a claim for tortious interference.

**Breach of Fiduciary Duty.**

 In support of its motion to dismiss the breach of fiduciary duty claim, the Bank attaches exhibits of matters outside the complaint. We cannot properly consider this information in ruling on a motion to dismiss, because under the applicable standard of review this court is limited to construing the facts alleged in the complaint. The facts surrounding the foreclosure proceedings are not apparent from the face of the complaint. Therefore, these facts and the res judicata issues may only be considered in connection with a motion for summary judgment. Accordingly, the motion to dismiss the breach of fiduciary duty claim should be and hereby is denied at this time.

**IV. Conclusion and Order.**

Wherefor, the Court makes its order as follows:

The motion to dismiss the complaint will be granted, unless on or before November 8, 2002, Plaintiff serves and files an amended complaint consistent with the requirements set forth herein.

If Plaintiff does not allege facts sufficient to state a federal anti-trust claim, the Court will decline to retain supplemental jurisdiction over the other state law claims for tortious interference with a contract and breach of fiduciary duty, and the entire case will be dismissed.

The balance of Defendant's motion seeking to dismiss the claim for breach of fiduciary duty is denied. However, if Plaintiff does timely file an amended complaint stating a federal anti-trust claim, the Defendant may raise the res judicata issues by filing a motion for summary judgment.

IT IS SO ORDERED.