# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2286

_____

George Par; IVYR, PLLC, doing business as Par Retina

*Plaintiffs - Appellants*

v.

Wolfe Clinic, P.C.; Jared S. Nielsen; Kyle J. Alliman; David D. Saggau

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: January 10, 2023
Filed: June 5, 2023

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Dr. George J. Par (and IVYR PLLC, doing business as Par Retina) sued Wolfe Clinic, P.C. (and three of its owner-physicians). Par alleged that the Clinic monopolized or attempted to monopolize the vitreoretinal care market. On the merits, the district court[1] initially dismissed the monopolization, fraudulent

_____

[1] The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

inducement, and recission claims, while remanding the remaining state law claims. In an amended judgment, the district court denied Par's motion to amend the complaint, affirmed the dismissal of the monopolization claims, but declined to exercise supplemental jurisdiction, dismissing all state law claims. Par appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Dr. Par, an ophthalmologist, specializes in vitreoretinal surgery. After the Clinic fired him, he founded Par Retina to provide retinal eye care services in Des Moines, Spencer, and Ft. Dodge, Iowa. Believing that the Clinic harmed his business, Par sued for monopolization and attempted monopolization, asserting 12 state law claims.

Wolfe Clinic moved to dismiss the monopolization, attempted monopolization, fraudulent inducement, and recission claims. In May 2022, the district court dismissed the monopolization claims, ruling that Par failed to plead a plausible claim under the Sherman Act because he did not allege an antitrust injury or state a proper geographic market. The district court also dismissed the fraudulent inducement and recission claims on their merits, but remanded the other state law claims. Par then moved to amend his complaint.

A month later, the district court entered an amended judgment, denying Par's motion and again dismissing the monopolization claims. The district court, however, ruled it could not remand the state law claims. It instead declined to exercise supplemental jurisdiction over any of the state law claims, dismissing all of them. Par argues that the district court erred in dismissing the antitrust, fraudulent inducement, and recission claims on their merits and refusing to grant his post-judgment motion to amend the complaint.

This court "review[s] *de novo* the grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in

favor of the non-moving party." ***Richter v. Advance Auto Parts, Inc.***, 686 F.3d 847, 850 (8th Cir. 2012). "We affirm a Rule 12(b)(6) dismissal if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" ***Double D Spotting Serv. v. Supervalu, Inc.***, 136 F.3d 554, 557 (8th Cir. 1998), *quoting **Hafley v. Lohman***, 90 F.3d 264, 266 (8th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009), *quoting **Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570 (2007). A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Id.***

II.

The Sherman Act authorizes two types of antitrust claims: Section 1 generally prohibits contracts that unreasonably restrict trade. *See* **15 U.S.C. § 1**. Section 2 prohibits the monopolization of a given market. *See* **15 U.S.C. § 2**. Here, Par alleges a monopolization claim under Section 2. Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States . . . ." **15 U.S.C. § 2**. Monopolization requires: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." ***United States v. Grinnell Corp.***, 384 U.S. 563, 570-71 (1966). "[I]t is axiomatic that the antitrust laws were passed for 'the protection of *competition,* not *competitors.*'" ***Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.***, 509 U.S. 209, 224 (1993), *quoting **Brown Shoe Co. v. United States***, 370 U.S. 294, 320 (1962). "The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." ***Spectrum Sports, Inc. v. McQuillan***, 506 U.S. 447, 458 (1993). Courts are "careful to avoid constructions of § 2 which might chill competition, rather than foster it." ***Id.***

Par alleges injuries to himself and his business—competitors of the Clinic. Par claims the Clinic interfered with his referral network by purchasing small optometry practices and by falsely disparaging Par to patients and referring physicians and optometrists. "As the Supreme Court has noted repeatedly, Congress enacted the antitrust laws to protect competition, not competitors." *Midwest Commc'ns v. Minnesota Twins, Inc.*, 779 F.2d 444, 450 (8th Cir. 1985).

Par argues he does not have to state a relevant market because the complaint alleges an "actual adverse effect on competition." To the contrary, to prevail on a Section 2 claim, a plaintiff must adequately plead a relevant market. *See Spectrum Sports, Inc.*, 506 U.S. at 455-56, 459 ("We stated that, to establish monopolization or attempt to monopolize under § 2 of the Sherman Act, it would be necessary to appraise the exclusionary power . . . in terms of the relevant market for the product involved.") ("We hold that petitioners may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous probability that they would monopolize a particular market and specific intent to monopolize."). *See also, e.g.*, *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009) ("The four counts at issue on appeal raise federal antitrust claims under Sections 1 and 2 of the Sherman Antitrust Act. . . . LRCC . . . has the burden of alleging a relevant market in order to state a plausible antitrust claim. Without a well-defined relevant market, a court cannot determine the effect that an allegedly illegal act has on competition."); *Southeast Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 612-13 (8th Cir. 2011) ("According to Saint Francis, Bard's sole-source GPO contracts, share-based discounts, and bundled discounts unreasonably restrain trade in violation of sections 1 and 2 of the Sherman Act . . . . The [*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000)] case makes clear that the threshold requirement for Saint Francis's antitrust claims is determining the relevant market."); *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 547 (8th Cir. 2007) ("To establish that a defendant possesses the requisite market power required for monopolization liability, a plaintiff must establish that the defendant has a dominant market share in a well-defined relevant market.").

The briefs discuss only *one* case in our Circuit that references Section 2 and the "actual adverse effect" standard: *Minnesota Ass'n of Nurse Anesthetists v. Unity Hospital*, 208 F.3d 655, 662 (8th Cir. 2000) ("But plaintiffs have failed to prove actual adverse effects on competition in that market, such as increased prices for anesthesia services, or a decline in either the quality or quantity of such services available to surgery patients. Absent concrete evidence of this nature, plaintiffs must prove market power in a relevant geographic market."). But in that case, the court conducted a Section 1 analysis. *See id.* (noting that plaintiffs "virtually abandon[ed]" their Section 2 claims on appeal).

Even assuming the "actual adverse effect" standard applied to Par's monopolization claims, the complaint states that the Clinic prevented new retinal care clinics from entering the market, without further detail. This conclusory allegation is insufficient to show an adverse effect on the competition in a market. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The complaint fails to state an actual adverse effect on competition, such as an increase in prices for vitreoretinal services or a decline in the quantity of services provided. Par must plead a relevant market.

"The definition of the relevant market has two components—a product market and a geographic market." **Bathke v. Casey's Gen. Stores, Inc.**, 64 F.3d 340, 345 (8th Cir. 1995). "Antitrust claims often rise or fall on the definition of the relevant market." **Id.** "The burden of establishing that a specified area constitutes a relevant geographic market in a particular case rests with the plaintiff." **Morgenstern v. Wilson**, 29 F.3d 1291, 1296 (8th Cir. 1994). The court must determine whether the plaintiff has alleged a geographic market that includes: (1) "the area in which a defendant supplier draws a sufficiently large percentage of its business" and (2) "a geographic market in which only a small percentage of purchasers have alternative suppliers to whom they could practicably turn in the event that a defendant supplier's anticompetitive actions result in a price increase." **Little Rock Cardiology**, 591 F.3d at 598.

A geographic market fails if it is too narrow, excluding regions where the defendant conducts sufficient business. *See Morgenstern*, 29 F.3d at 1297 (ruling that the plaintiff's proposed geographic market, which excluded Omaha, was insufficient because the record showed the defendant conducted significant business in Omaha). A plaintiff fails to plead a plausible claim for monopolization where the proposed geographic market does not represent the area where the defendant supplier draws a "sufficiently large percentage of its business." **Little Rock Cardiology**, 591 F.3d at 599. The complaint in *Little Rock Cardiology* alleged that Baptist Health conspired with Blue Cross to monopolize or attempt to monopolize the market for cardiology procedures and private health insurance. **Id.** at 595. Little Rock Cardiology defined the relevant geographic market as Little Rock because that is where patients traveled for cardiology procedures. **Id.** at 598. This court determined that a geographic market consisting of only Little Rock was too narrow because the complaint showed Baptist Health also operated in other cities, such as Hot Springs, Pine Bluff, Conway, Searcy, and El Dorado. **Id.** The *Little Rock Cardiology* decision clarified that a city is not a per se improper geographic market, but "the boundaries of a relevant market will turn on the factual allegations presented in any given case." **Id.** at 599.

Par proposes two different approaches to defining a geographic market. He first claims that the cities of Des Moines, Ft. Dodge, and Spencer are each a proper geographic market (the cities are about 90, 92, and 179 miles apart, respectively). As in *Little Rock Cardiology*, these geographic markets are too narrow because the complaint says, "Wolfe Clinic has offices across the state of Iowa." These three cities thus fail to account for the area where the Clinic "draws a sufficiently large percentage of its business." **Id.** at 598. Par argues that each city is a proper geographic market because it is where patients prefer, or have the ability, to travel. The proper inquiry is not where customers *prefer* to travel, but instead, where there are actual alternatives for services. *See Morgenstern*, 29 F.3d at 1296 ("The geographic market encompasses the geographic area to which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition."). Based on the factual allegations here, drawing a

-6-

market boundary around three distant cities fails to allege that the Clinic possessed monopolized power.

Par alternatively proposed "Central Iowa" as a geographic market. This geographic market is insufficient because the complaint does not describe alternative suppliers of retinal eye care in Central Iowa. *See id.* (ruling that the plaintiff did not establish a claim for monopolization because the "evidence regarding the relevant geographic market failed to address a critical legal question: where could consumers of the product (adult cardiac surgery) *practicably turn for alternative sources of the product*."). The complaint here focuses only on the characteristics of retinal patients, describing them as elderly or infirm; relatively immobile; and dependent on caregivers. Because it does not address the alternative sources of vitreoretinal care in Central Iowa, the complaint cannot plausibly allege the Clinic monopolized this proposed market.

Courts are reluctant to dismiss antitrust complaints before the parties have had an opportunity to fully conduct discovery. **Little Rock Cardiology**, 591 F.3d at 601. Here, dismissal is appropriate because the defects in Par's complaint would not be cured by additional discovery. *See id.* (stating that dismissal of the monopolization claims was appropriate where "more discovery in this case could not cure the defects in LRCC's legal theory as to either the relevant product or geographic market"). Without allegations of a proper geographic market, Par's antitrust claims must be dismissed because there can be no inference of monopoly power. *See* **Morgenstern**, 29 F.3d at 1297 (affirming dismissal of antitrust claim when "within the properly defined relevant geographic market, no permissible inference of monopoly power can be drawn").

III.

This court "review[s] an order denying leave to amend a complaint for abuse of discretion." **Roberson v. Hayti Police Dep't**, 241 F.3d 992, 995 (8th Cir. 2001). "[D]istrict courts in this circuit have considerable discretion to deny a post judgment

motion for leave to amend because such motions are disfavored, but may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits . . . ." *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). "However, interests of finality dictate that leave to amend should be less freely available after a final order has been entered." *Id.* at 823. *See United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) ("[R]ule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'"), *citing Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998).

"Unexcused delay is sufficient to justify the court's denial . . . if the party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend, particularly when the plaintiff was put on notice of the need to change the pleadings before the complaint was dismissed, but failed to do so." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). *See, e.g.*, *Uradnik v. Inter Fac. Org.*, 2 F.4th 722, 727 (8th Cir. 2021) (explaining that unexcused delay justifies denying leave to amend "when the party knew of the need to change the pleadings and then had her claim dismissed"). This court has affirmed the denial of a Rule 59(e) motion filed two days after the judgment was entered. *See Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 964 (8th Cir. 2015). This court there concluded that the district court did not abuse its discretion in finding the plaintiffs "inexcusably delayed in requesting leave to amend and denying their request." *Id.*

The district court here dismissed Par's motion, explaining he had not pointed "to errors of law or fact in the Court's order warranting amendment of the judgment." Par argues the court abused its discretion because the amended complaint would have stated a claim under the Sherman Act, which would resolve the case on its merits. *See* **FRCP 15(a)(2)** ("The court should freely give leave [to amend] when justice so requires.").

The district court did not abuse its discretion by denying Par's motion to amend the complaint. The information in the amended complaint was previously available to Par and should have been pleaded before the judgment was entered. *See Innovative Home Health Care, Inc.*, 141 F.3d at 1286 (Rule 59(e) motions "cannot be used to . . . raise arguments which could have been offered or raised prior to the entry of judgment."). *See also Metro. St. Louis Sewer Dist.*, 440 F.3d at 934 (ruling that the district court did not abuse its discretion by denying motion to amend the complaint because the evidence introduced was previously available, but the party failed to plead it). Par was on notice about the deficiencies in his complaint when the Clinic filed its motion to dismiss. Despite this, Par inexcusably delayed filing the Rule 59(e) motion—waiting over five months after the motion to dismiss was filed, and almost a month after the district court dismissed the complaint. *See Ash*, 799 F.3d at 963-64 (ruling that the district court did not abuse its discretion denying the Rule 59(e) motion filed two days after the judgment because the plaintiffs "had the opportunity to request leave to amend at any time before the district court ruled on the motion to dismiss").

IV.

Both parties' arguments focus on the district court's first judgment of May 10, 2022. This court, however, has jurisdiction to review only the district court's final decision—the amended judgment entered on June 16, 2022. *See* **28 U.S.C. § 1291** ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). The amended judgment again dismissed the monopolization claims but declined to exercise supplemental jurisdiction over the state law claims, dismissing all of them. The district court explained the amended judgment: "after dismissing Plaintiffs' antitrust claims giving rise to federal question jurisdiction, the Court should have dismissed the remaining state law claims for lack of jurisdiction." The district court added: "dismissal of Plaintiff's antitrust claim constituted dismissal of Plaintiffs' action for lack of subject matter jurisdiction." Par's challenge to the first judgment's dismissal of the fraudulent inducement and recission claims is moot.

## V.

Par failed to plead a plausible claim for monopolization or attempted monopolization because he did not allege a relevant geographic market. The district court did not abuse its discretion by denying Par's post-judgment motion to amend the complaint or by not exercising supplemental jurisdiction over the state law claims.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____