United States Court of Appeals
For the Eighth Circuit
No. 25-1056

Goldfinch Laboratory, P.C.

*Plaintiff - Appellant*

v.

Iowa Pathology Associates, P.C.; Regional Laboratory Consultants, P.C.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 13, 2026
Filed: February 23, 2026
_____

Before LOKEN, ARNOLD, and GRUENDER, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After four pathologists left the laboratory where they worked to form a competing startup called Goldfinch Laboratory, P.C., Goldfinch claimed that the established laboratory committed certain acts in an effort to drive it out of business and maintain a monopoly over pathology services in Central Iowa, in violation of the

Sherman Antitrust Act and similar Iowa laws. *See* 15 U.S.C. § 15(a); Iowa Code § 553.12. The district court[1] dismissed the startup's complaint. We agree with the district court's decision and so affirm.

At this stage of the case, we accept the factual allegations in the complaint as true. *See Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 445 (8th Cir. 2023). According to the complaint, Defendants Iowa Pathology Associates, P.C., and Regional Laboratory Consultants, P.C., operated a laboratory in Des Moines that provided pathology and dermatopathology services to physicians who referred patient specimens there for diagnosis. Goldfinch says that the defendants had enjoyed monopoly power over the market for pathology services in Central Iowa, allowing them to charge "supracompetitive prices." The defendants allegedly sought to preserve their monopoly by pressuring their pathologists to sign employment agreements containing noncompetition provisions. But when some pathologists refused to sign and instead formed Goldfinch, the defendants, Goldfinch asserts, made false statements to physician referrers and others about the departing pathologists and their new laboratory and engaged in other acts meant to drive their new competition from the market. Goldfinch estimates that it lost over three million dollars as a result of the defendants' actions.

Goldfinch claims that the defendants unlawfully conspired to restrain trade in the market for pathology services and the submarket for dermatopathology services, *see* 15 U.S.C. § 1, Iowa Code § 553.4, and attempted to monopolize that market and submarket. *See* 15 U.S.C. § 2, Iowa Code § 553.5. We note at the outset that no one suggests that we should interpret Iowa antitrust law differently from its federal counterparts, *see Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 561 (8th Cir. 1998) (citing Iowa Code § 553.2), so for simplicity's sake we will deal with

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

federal law exclusively. In dismissing Goldfinch's complaint, the district court held that Goldfinch had not suffered an antitrust injury and that, even if it had, it was not a proper plaintiff to raise these antitrust claims. It also held that Goldfinch had failed to state a claim on the merits. Because we agree with the district court's decision on the merits, we do not decide whether Goldfinch has suffered an antitrust injury or whether it is a proper plaintiff to bring these claims. *See L.A.P.D., Inc. v. Gen. Elec. Corp.*, 132 F.3d 402, 404 (7th Cir. 1997); *Hairston v. Pac. 10 Conf.*, 101 F.3d 1315, 1318 (9th Cir. 1996). We review de novo the district court's decision to dismiss the complaint. *See Par*, 70 F.4th at 445. To survive the motion to dismiss, Goldfinch's complaint must contain sufficient factual matter stating a claim to relief that is plausible on its face. *See id.* at 446.

We begin with Goldfinch's conspiracy claim against the two defendants. It takes (at least) two to contract, combine, or conspire in restraint of trade under 15 U.S.C. § 1. But not just any two will do. For example, a § 1 claim will not succeed against a single firm just because two of its employees coordinate with one another, nor can the coordination between a parent company and its wholly owned subsidiary give rise to a § 1 claim. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 776 (1984). So "concerted action under § 1 does not turn simply on whether the parties involved are legally distinct entities." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 191 (2010). The relevant question is whether the coordination is between "separate economic actors pursuing separate economic interests," which would "deprive[] the marketplace of independent centers of decisionmaking and . . . thus of actual or potential competition." *See id.* at 195. As another circuit court has put it, "[t]he crucial question is whether the entities alleged to have conspired maintain an 'economic unity,' and whether the entities were either actual or potential competitors." *See Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005).

Reading Goldfinch's complaint, it is readily apparent that coordination between Iowa Pathology Associates, P.C., and Regional Laboratory Consultants, P.C., cannot give rise to a § 1 claim. Even though they are separate legal entities, the complaint itself makes clear that they are not separate economic actors pursuing separate economic interests who conspired to restrain competition. For one thing, Goldfinch attached a copy of the contract that it claims the defendants pressured its pathologists to sign, and in that contract, which we may consider, *see Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 732 (8th Cir. 2015), the two defendants were referred to as the singular "Employer." For another, the complaint also stated that the two defendants were "affiliate[s]" that shared profits and were comprised of the same pathologists. It's difficult to imagine in these circumstances how the two entities could be actual or potential competitors with one another or be considered separate economic actors pursuing separate economic objectives. Instead, the complaint alleges a clear economic unity between the defendants that § 1 doesn't prohibit. We therefore agree with the district court's decision to dismiss Goldfinch's § 1 claim.

Turning now to Goldfinch's claim under § 2, it asserts that the defendants attempted to monopolize the market for pathology services and the submarket for dermatopathology services. To succeed on this claim, Goldfinch must show not only that the defendants engaged in anticompetitive conduct with the intent to monopolize, but also that there was a dangerous probability that they would achieve monopoly power. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 459 (1993). To "determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *See id.* at 456. Without a well-defined market, a court cannot determine if any allegedly illegal act had an effect on competition, *see Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009), or determine whether a defendant "is monopolizing anything" at all. *See Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical*

-4-

*Assisting*, 127 F.4th 178, 187 (10th Cir. 2025). "Antitrust claims often rise or fall on the definition of the relevant market." *Par*, 70 F.4th at 447.

No one disputes that Goldfinch must adequately plead the existence of a relevant market to prevail. *See id.* "The definition of the relevant market has two components—a product market and a geographic market." *See id.* The product market here, all appear now to agree, is the market for pathology and dermatopathology services. The parties dispute, though, whether Goldfinch pleaded an adequate geographic market. "A geographic market is the area in which consumers can practically turn for alternative sources of the product and in which the antitrust defendants face competition." *F.T.C. v. Tenet Health Care Corp.*, 186 F.3d 1045, 1052 (8th Cir. 1999).

Courts are alert to ensure that plaintiffs do not define the geographic market too narrowly to make it appear, by artful pleading, that a defendant has a dangerous probability of achieving monopoly power when it really doesn't. *See, e.g.*, *Little Rock Cardiology*, 591 F.3d at 599. Consider, for example, a hamburger vendor that raises a § 2 claim against the only other hamburger restaurant on a particular city block, asserting that the existing restaurant tried to drive the plaintiff's nascent enterprise out of business. Even if the defendant succeeds in eliminating competition on the block, that doesn't mean that customers are practically forced to consume a monopolist's hamburgers at high prices. If the customer "can practically turn" elsewhere for hamburgers, *see id.*, as by simply visiting a restaurant on an adjacent block or just down the street, then it can't be said that the defendant restaurant is dangerously close to monopolizing the hamburger market. As other courts have explained it, the relevant geographic market is "the area of effective competition" or "the narrowest market which is wide enough so that products from adjacent areas cannot compete on substantial parity with those included in the market." *See Ass'n of Surgical Assistants*, 127 F.4th at 189; *see also Tampa Elec. Co. v. Nash. Coal Co.*, 365 U.S. 320, 327–29 (1961).

Goldfinch asserts that the relevant geographic market in this case is Central Iowa. It notes that, before Goldfinch was formed, the defendants operated the only independent pathology practice in Central Iowa that wasn't tied exclusively to one source of referrals. It recognized that the University of Iowa also employs pathologists but that they serve only physicians at the University, suggesting, presumably, that the University isn't an alternative for physician referrers looking to escape the defendants' alleged monopoly.

But Goldfinch's complaint contains a significant deficiency: It fails to explain why the area of effective competition for pathology and dermatopathology services is limited to Central Iowa. For example, Goldfinch never alleges why physician referrers can't escape the defendants' alleged monopoly by sending specimens to competing laboratories outside Central Iowa, such as to nearby Omaha, Chicago, or elsewhere. The complaint contains no allegations about increased regulatory burdens, time constraints, price impracticalities, or issues of specimen deterioration that makes Central Iowa practically the only area where physicians can turn. In fact, the complaint says that some of the specimens that Goldfinch and the defendants analyze traveled in interstate commerce, which means they weren't confined to Central Iowa. In sum, Goldfinch's allegations do not plausibly show that the defendants' actions have affected competition, *see Little Rock Cardiology*, 591 F.3d at 596, or that the defendants are close to monopolizing anything. *See Ass'n of Surgical Assistants*, 127 F.4th at 187. Though courts are generally reluctant to dismiss antitrust claims on the pleadings, we've dismissed antitrust claims for a failure to allege a proper geographic market before. *See, e.g.*, *Par*, 70 F.4th at 448–49. Dismissal is especially appropriate when the plaintiff fails "even to attempt a plausible explanation as to why a market should be limited in a particular way." *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 443 (4th Cir. 2011) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (Sotomayor, J.)).

Goldfinch assures us that if we allow the case to proceed, then discovery will reveal that it takes longer to send specimens outside Central Iowa, that local pathologists are generally more accessible, and that referring physicians prefer to work with pathologists they know personally. Perhaps. Our cases, though, have consistently drawn a distinction between where customers actually go and where they could practically go should a firm gain monopoly power. *See, e.g.*, *Par*, 70 F.4th at 448; *Morgenstern v. Wilson*, 29 F.3d 1291, 1296 (8th Cir. 1994). For example, even if it's true that consumers actually prefer to buy gasoline close to home, that doesn't mean they can't practically turn to alternatives slightly farther from home to avoid doing business with a monopolist. *See Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345–46 (8th Cir. 1995). We recognize that a consumer pays at least some cost any time he does business with a secondary choice over a primary choice, such as when he buys gas at a store slightly farther from home or eats a hamburger a block from his preferred restaurant. We also understand that at some point the transactions cost can grow so large that the secondary choice can no longer be a practical alternative. But Goldfinch never alleged in its complaint or even suggests in its brief why pathologists at laboratories outside Central Iowa aren't practical alternatives, even if it might take longer for referring physicians to ship specimens to pathologists whom they don't know and who might be less accessible. Without explaining how slightly more distant laboratories aren't practical alternatives for referring physicians, we cannot tell whether the defendants were dangerously close to monopolizing anything. And so Goldfinch's § 2 claim fails.

Goldfinch asserts that the district court should have at least allowed it to amend its complaint to fix the deficiencies the district court identified. But Goldfinch hasn't spelled out how amendments would salvage its claims. It didn't say how it proposed to amend its complaint to allege, in support of its § 1 claim, that the two defendants are capable of conspiring with one another, even though Goldfinch's pathologists previously worked for the defendants and should know if they actually possessed independent centers of decisionmaking. And with respect to its § 2 claim, Goldfinch

didn't say how it proposed to amend the complaint to explain how laboratories outside Central Iowa are not practical alternatives for referring physicians. The most it proposed to do was describe the boundaries of Central Iowa with more specificity, but we don't see how that effort advances the ball for either claim. We therefore cannot fault the district court for not permitting Goldfinch to amend its complaint because the only amendments Goldfinch proposed would be futile to stave off dismissal. *See Kale v. Aero Simulation, Inc.*, 139 F.4th 684, 690 (8th Cir. 2025).

Affirmed.

_____